Gary JONES, Plaintiff–Appellant,

v.

Donna E. SHALALA, Secretary of Health and Human Services, Defendant–Appellee.

No. 92–3143.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 5, 1993.

Decided Nov. 29, 1993.

Edward G. Vogt (argued), Kankakee, IL, for plaintiff-appellant.

Mary Thorson (argued), Dept. of Health and Human Services, Region V, Office of the General Counsel, Chicago, IL, for Donna E. Shalala.

Before COFFEY, FLAUM, and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

Gary Jones appeals from the district court's order affirming the decision of the Secretary of Health and Human Services ("Secretary") to terminate Jones' disability benefits. We affirm.

### I. Background

While employed as a truck driver in June 1986, Gary Jones sustained serious injuries to his right hand, wrist, and arm, as he attempted to crank up a trailer. He suffered torn ligaments, separation of bones, subsequent nerve damage, and deterioration of muscles and nerves. Jones underwent a triscaphoid intercarpal fusion and bone graft in January 1987. Three months later he began extensive, outpatient physical therapy which lasted until July 1, 1988. His injuries have rendered him unable to return to his former job.

Jones applied for Disability Insurance Benefits in March 1988 under the Social Security Act ("Act"), 42 U.S.C. §§ 416(i) and 423(d). The Regional Commissioner of the Social Security Administration determined that Jones was not disabled. Jones appealed to the Administrative Law Judge ("ALJ") who determined that Jones was disabled from the day of his accident, June 2, 1986, until July 2, 1988, the day Jones ceased his outpatient therapy. The ALJ found that Jones had experienced medical improvement and was no longer disabled for purposes of the Act as of July 2, 1988. Jones appealed the decision of the ALJ to the Appeals Council; the Appeals Council found that the ALJ did not adequately consider Jones' complaints of pain and remanded the case for further findings. On remand the ALJ incorporated his original order, modifying it to include an additional discussion of Jones' subjective complaints. The ALJ explained that Jones presented minimal complaints of pain at the hearing and never asserted that pain would preclude him from engaging in gainful activity. The Appeals Council denied further review, and the Secretary adopted the opinion of the ALJ as her final decision. Jones filed an action in the district court appealing the Secretary's decision, pursuant to 42 U.S.C. § 405(g). The court found that the ALJ's decision was supported by substantial evidence and granted summary judgment in favor of the Secretary. Jones appeals.

### II. Analysis

When the Appeals Council denied Jones' second request for review, the ALJ's decision became the final decision of the Secretary. 20 C.F.R. § 404.981 (1992); see *Wolfe v. Shalala*, 997 F.2d 321, 322 (7th Cir.1993). Our review of the Secretary's decision is limited. *Cass v. Shalala*, 8 F.3d 552, 554–55 (7th Cir.1993) ("[T]he findings of the Secretary as to any fact, if supported by *substantial evidence*, shall be conclusive.") (quoting 42 U.S.C. § 405(g)). We will uphold the Secretary's findings if they are supported by substantial evidence. *Pope v. Shalala*, 998 F.2d 473, 480 (7th Cir.1993). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citation omitted); *Cass*, 8 F.3d at 554; *Ehrhart v. Secretary of Health and Human Services*, 969 F.2d 534, 538 (7th Cir.1992). We may not substitute our own judgment or reweigh the evidence to decide whether a claimant is disabled. *Cass*, 8 F.3d at 555; *Ehrhart*, 969 F.2d at 538. Jones challenges the Secretary's finding that he has experienced medical improvement and is no longer disabled; Jones also argues that having the use of only one arm so severely limits his prospects of finding employment that he is entitled to benefits.

The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical ... impairment which can be expected to result in death, or which has lasted or can be expected to last for 12 continuous months." 42 U.S.C. § 423(d)(1)(A); *Clark v.*

*Sullivan,* 891 F.2d 175, 177 (7th Cir.1989). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A); *Clark,* 891 F.2d at 177.

The ALJ found that Jones was disabled for a closed period of time between the date of the injury and the day his outpatient physical therapy ended. A claimant who experiences medical improvement related to his ability to engage in work may lose his eligibility to receive benefits if there is an improvement in the claimant's condition:

> A recipient of benefits . . . may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling only if such a finding is supported by—
> 
> > (1) substantial evidence which demonstrates that—
> > 
> > > (A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and
> > > 
> > > (B) the individual is now able to engage in substantial gainful activity; . . .

42 U.S.C. § 423(f). The Social Security regulations define medical improvement as "any decrease in the medical severity of [the claimant's] impairments which [were] present at the time of the most recent medical decision that [the claimant] was disabled." 20 C.F.R. § 404.1594(b)(1) (1992).

We hold that substantial evidence supported the ALJ's findings that Jones had experienced medical improvement. Dr. Wesley Choy, Jones' treating physician, noted in March 1987, that after beginning physical therapy, Jones had experienced improvement in his level of swelling and the range of motion in his wrist. (R. at 212). Over the next year, the swelling and stiffness in Jones' wrist and arm improved with physical therapy. (R. at 202–211). On December 1, 1987, Dr. Choy's notes reflect that Jones was complaining of pain in his wrist area, but there was no visible evidence of swelling or redness. (R. at 201). Two weeks later Jones continued to complain of "intermittent symptoms," (R. at 200), but the swelling in his wrist was mild and his fingers had no stiffness or atrophic changes. *Id.* X-rays taken that day showed "good bony consolidation of his fusion." *Id.* In May 1988 Dr. Choy recommended that Jones discontinue outpatient physical therapy and continue on a home therapy program. (R. at 251). At this point, it appeared that Jones would not experience any more improvement in his right arm and wrist. *Id.* The record supports the conclusion that, while Jones would not regain use of his right arm, the termination of his physical therapy and the stabilization of his arm and wrist enabled Jones to engage in gainful employment.

As the ALJ found, there was no indication in the record that Jones had any limitation on the ability to walk or stand for prolonged periods or lift or carry with his left arm at the time of his administrative hearing. The ALJ acknowledged that Jones could not work in extreme temperatures and had nonexertional limitations that precluded fine manipulative tasks with his right hand. However, without having to spend his days engaging in extensive outpatient therapy, Jones could work in jobs which did not require the use of his right arm.[1] The record supports the finding that Jones experienced medical improvement relating to his ability to engage in employment.

---

1. Jones argues that the ALJ's decision was "contrary" to an example in the regulations of a potentially disabled claimant who does not meet all of the criteria of a specific rule and who does not have the ability to perform a full range of sedentary work as described in 20 C.F.R. Pt. 404, Subpt. P, App. 2, 201.00(h). This provision does not apply to Jones because he is not limited to sedentary work.

Jones' brief contains a one-sentence argument that the ALJ did not consider and evaluate pain in making his decision.[2] Jones' assertion is incorrect. Both in his initial determination and on remand, the ALJ specifically evaluated Jones' subjective complaints of pain and considered the impact his pain would have on his ability to work. Although Jones testified that his fingers stiffened without therapy and later testified that he was experiencing pain at a particular moment, he made no suggestion that pain or stiffness in his hand would interfere with his ability to work. His complaints of pain were minimal. The ALJ determined that Jones' testimony regarding pain was credible and considered Jones' residual functional capacity ("RFC") to be significantly reduced. However, the ALJ noted that Jones never testified that pain would preclude him from working, and substantial evidence appears to support his determination.

After determining that Jones had experienced some medical improvement related to his ability to work, the ALJ examined whether Jones was functionally capable of working despite his limitations. The ALJ agreed that Jones could not perform his past work but determined that Jones' RFC permitted him *to engage in other substantial gainful activity.* The ALJ asked the vocational expert ("VE") if jobs existed that someone such as Jones could perform. After listening to Jones' testimony and reviewing Jones' file, the VE testified that several jobs existed in the national economy which could be performed by an individual who had lost the use of his dominant arm. The jobs he specified existed in the metropolitan Chicago area (Cook County and the collar counties) and could be performed with Jones' restrictions.[3] When the ALJ asked Jones whether he would be capable of performing these specific

jobs, Jones replied in the affirmative. Jones stated he could work as an automatic machine tender, a guard, and a visual inspector. (R. at 58). He never indicated that pain or discomfort would interfere with his ability to adequately perform the described jobs.

Jones claims in his Statement of Issues that the VE did not consider pain in his assessment of available employment. Aside from the absence of subsequent argument on this claim,[4] Jones' assertion lacks foundation. The VE had listened to Jones' testimony and reviewed Jones' file before presenting his expert opinion. *See Ehrhart,* 969 F.2d at 540 (hypothetical question need not incorporate every aspect of the claimant's impairments so long as the record supports the conclusion that the vocational expert considered the medical reports and documents); *see also Cass,* 8 F.3d at 555 The VE was aware that Jones experienced some discomfort in his arm, but as the record reveals, Jones did not emphasize pain as a significant restriction on his ability to perform the suggested jobs. Jones was given an opportunity to speak after the VE testified about potential jobs and he agreed with the VE's assessments. (R. at 58).

Jones focuses a significant portion *of his argument on his belief that he is* entitled to disability benefits solely because he has lost the use of one arm. This argument blurs the distinction between a claimant's ability to work and a claimant's ability to find satisfactory work. Jones repeatedly argued that no employer would want to hire an individual who had lost the use of one arm if another individual had two arms. Claimants with the use of only one arm are not automatically entitled to disability benefits, *see, e.g., Herr v. Sullivan,* 912 F.2d 178 (7th Cir.1990); *Trimiar v. Sullivan,* 966 F.2d 1326 (10th Cir.1992), even if the impaired

---

2. We have recently modified our position on evaluating a claimant's subjective complaints of pain in accordance with the Secretary's recent clarifying regulations. 20 C.F.R. §§ 404.1529 and 416.929 (1992); *Pope v. Shalala,* 998 F.2d 473 (7th Cir.1993). Jones does not argue that the ALJ used the wrong standard for evaluating subjective complaints; Jones argues that the ALJ did not consider pain at all.

3. As examples, the VE listed automatic machine tending (15,000 jobs in the metropolitan Chicago area), package wrappers (10,000 jobs), guard and receptionist work (5,000–7,000 jobs), and visual inspection positions (10,000 jobs). (R. at 55–56). He also mentioned other jobs requiring machine operation.

4. Issues which are not discussed in the body of the brief are generally waived. *See Ehrhart,* 969 F.2d at 537 n. 5.

arm is accompanied by pain. *See, e.g., Waite v. Bowen,* 819 F.2d 1356 (7th Cir.1987). Jones conceded that he could perform jobs which would allow him to sit and do minimal physical activities requiring the use of only one hand, (R. at 43), but stressed his opinion that those jobs did not really exist. When informed of potential jobs in nearby locations which paid minimal wages, Jones questioned the feasibility of moving to other cities for employment. Jones also challenged the VE's credibility in assessing the availability of employment for one-armed individuals. The ALJ evaluates the credibility of the vocational expert's testimony, *Sias v. Secretary of Health and Human Services,* 861 F.2d 475, 480 (6th Cir.1988), and it appears that here the ALJ found the VE credible. Although the VE need not have direct first-hand knowledge of someone in a claimant's position performing such jobs, *see id.* at 481, the VE testified that he personally had placed one-armed individuals in the types of jobs he described for Jones. (R. at 65).

Jones presented anecdotal descriptions of the difficulties he had encountered in attempting to secure employment at a gas station, a grocery store, and a bar, but the regulations clearly specify that inability to find work is not the same as inability to work. A claimant is not entitled to disability benefits if he is capable of working but remains unemployed because he cannot find work, few jobs exist in the local area, no job openings exist at a particular place of employment, or the claimant does not want to do a particular kind of work. 20 C.F.R. § 404.1566(c) (1992); *see* 42 U.S.C. § 423(d)(2)(A).

### III. Conclusion

While one can sympathize with the difficulties Jones has experienced in finding satisfactory work which accommodates his limitations, the Secretary is permitted to grant benefits only to those who are incapable of engaging in any substantial gainful activity by reason of a medically determinable physical or mental impairment. 42 U.S.C. § 423(d). If jobs exist which a claimant could perform, he will not be entitled to disability benefits, regardless of the availability of those particular jobs to him. *See* 42 U.S.C. § 423(d)(2)(A). Jones' difficulties in sustaining gainful employment appear to arise from prevailing economic conditions, and that problem cannot be addressed through the provisions of the Social Security Act. Congress created a scheme for granting disability benefits to specified individuals; those who do not have a disability, as defined by Congress, cannot qualify for disability benefits.

AFFIRMED.