**Gerald L. MOOMEY, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

No. 97–3391.

United States District Court, C.D. Illinois, Springfield Division.

May 5, 1998.

prevail.

James A. Lewis, Springfield, IL, for Defendant.

## OPINION

RICHARD MILLS, District Judge.

Social Security disability claim.

Plaintiff's claim denied. He appeals.

Is the ALJ's decision supported by substantial evidence?

Yes.

### I. PROCEDURAL BACKGROUND

Gerald L. Moomey ("Moomey") applied for Disability Insurance Benefits (DIB) in June 1995 alleging disability since February 25, 1993. The state agency denied his claim initially and on reconsideration. On May 6, 1996, Moomey appeared with counsel and testified at an administrative hearing before Administrative Law Judge ("ALJ") Lyle E. Lipe. A vocational expert also testified. On June 21, 1996, the ALJ found Moomey was not eligible for DIB. The Appeals Council denied Moomey's request for review. Moomey then commenced this action, seeking review of the ALJ's decision.

### II. FACTS

Moomey was born November 22, 1953 and was 42 years old at the time of the ALJ's decision. He is a high school graduate and has past relevant work experience as a millwright and welder.

### A. MEDICAL EVIDENCE

Moomey injured his back on February 25, 1993 when he was unloading a truck at work and fell on the ice. He complained of back and radiating right leg pain and numbness. He tried physical therapy for two and one-half months but sustained little relief. He had an epidural injection and felt that the first injection provided some relief but the second injection did not provide any significant improvement. Moomey also tried many medications without relief.

On May 23, 1993, Brian Russell, M.D., examined Moomey and found no clear atrophy in Moomey's lower extremities. Moomey could stand on his toes and heels but

Patrick James Smith, Springfield, IL, for Plaintiff.

Dr. Russell noted some limitations on the right side. Moomey could only partially perform a knee bend and lateral bending appeared somewhat limited. Dr. Russell also noted no particular tenderness. Moomey had mildly positive straight leg raising on the right side and his reflexes were diminished in a symmetrical fashion. Dr. Russell noted that the magnetic resonance imaging (MRI) results indicated a rather severe congenital stenosis with degenerative disc at L3–4 and L4–5 which further compromised the canal.

Moomey was admitted to the hospital on June 14, 1993. His physician, F.W. Schroeder, M.D., noted that Moomey had spinal stenosis, plus a herniated disc at L4–5. A laminotomy and diskectomy were performed on June 15, 1993.

Moomey continued to report pain. On July 20, 1993, Moomey underwent a decompression laminectomy and revision diskectomy. By August 1993, Moomey complained of some numbness and pain in his buttocks and right leg. In September 1993, Dr. Schroeder indicated his belief that Moomey might be suffering from a pars fracture and, in November, referred him to Dr. E. Shannon Stauffer. Dr. Stauffer cautioned against further surgery and recommended conservative treatment.

In February 1994, after continued complaints from Moomey, Dr. Schroeder indicated that Moomey's problem appeared to be lumbar spondylosis with myelopathy and some problem with continued lumbar spinal stenosis. He noted that Moomey was going to have to change occupations.

On October 14, 1994, Dr. Schroeder noted that Moomey continued to complain of pain and that "[h]opefully they can find some job for him to do." On November 14, 1994, Schroeder noted that Moomey had made a "valid attempt to return to work" but that Dr. Schroeder thought "he is not too well motivated."

In January 1995, Moomey was admitted to the hospital for low back pain and leg symptoms after reinjuring his back. Moomey stated that he had been doing relatively well when four days prior to admission, he rolled over in bed and felt a pop in his back. On examination, Dr. Jeffery Parker and Dr. Schroeder noted that Moomey's back was mildly tender, that he had 5/5 muscle strength and that his sensory examination was intact. His reflects were +2 at the knees and ankles bilaterally. He was able to walk heel to toe without difficulty. The doctors' impression was that Moomey had recurrent herniated nucleus pulposus; the MRI revealed "[p]ost operative fibrosis findings about the right side of the thecal sac at L4–5. Minor disc bulges L3–4 through L5–S1."

On March 7, 1995, Edward Trudeau, M.D., performed electrodiagnostic testing and the findings were consistent with mild to moderately severe right radiculopathy. Dr. Trudeau noted that it was not unusual for a patient with two previous back operative interventions.

Moomey continued to complain of pain. On March 20, 1995, Dr. Schroeder referred Moomey to the Memorial Medical Center Pain Clinic for treatment. At the Pain Clinic, Moomey underwent occupational therapy, counseling, and physical therapy. He also underwent a series of epidural steroid injections.

On May 30, 1995, Dr. Schroeder stated that Moomey indicated he had received some relief from the pain clinic. Dr. Schroeder also noted:

At this point in time, he doesn't fall any higher than in the light duty category, lifting more than 25 lbs frequently. Certainly, I don't think he can sit from more than an hour without a 5 minute rest period. I think he would have difficulty standing or walking more than an hour continuously without being able to sit down and change positions. I think this puts him in the light duty category. I don't think this gentleman is ever going to get back to heavy gainful employment.

On July 21, 1995, Dr. Stauffer again examined Moomey and noted that Moomey sat with difficulty on the examination table and had difficulty getting into a standing position. Moomey had very little range of motion in the spine and could bend over only to get his hands to his knees. Moomey demonstrated equal reflexes at the knees but had decreased ankle jerk on the right compared to

the left; Dr. Stauffer stated that this was not unusual following a back surgery. Moomey also had negative straight leg raising. Dr. Stauffer recommended that Moomey "continue with attempting to get sedentary type occupation and living as active a life as he possibly can within limitation of his pain."

## B. *MOOMEY'S TESTIMONY*

Moomey testified that on February 25, 1993, he slipped while unloading a truck at work. He attempted to work as a security guard at Burnes Security in June of 1995 but was only able to work for two days because he reinjured his back. Moomey also testified that the last time he received any medical treatment for his back was four months prior to the hearing. At the time of the hearing, Moomey was taking Ibuprofen for pain as needed and Naproxen, an anti-inflammatory drug.

Moomey testified that he lived with his wife and son. He stated that he did not do any laundry, clean any dishes, make his bed, run a vacuum, mop, or sweep floors. He occasionally would cook and go to the grocery store but his wife did most of the household chores. He reported some difficulty caring for his own personal needs, such as bending over to put on his shoes, but that for the most part he was able to care for his personal needs, such as washing his own hair and bathing himself.

Moomey testified that a typical day included driving to his parents' house and having coffee with them. He would spend his afternoons watching television or walking around. Moomey testified that he could walk one-eighth of a mile and that he often used a cane. About once every two months he would visit persons other than his parents. Moomey also testified that he attended lodge meetings once a month.

## C. *VOCATIONAL EXPERT'S TESTIMONY*

Vocational expert, Dr. James Lanier, ("VE"), testified at the hearing. The ALJ asked the VE the following questions:

All right, I'm going to ask you some hypothetical questions. We'll call the first one, hypothetical question A, and for that, please assume a 39 to 42 year old person.... For this hypothetical question A, please assume that the person has a high school education. Please assume a work history the same as the Claimant[']s. An exertional capacity limited to a full range of light work with the following exceptions. He may only occasionally stoop, crouch, crawl or kneel. Needs to change positions from sitting to standing and return to sitting each hour. May only occasionally engage in overhead reaching.... Can you list any unskilled jobs that the described person could perform at the light or sedentary exertional levels?

The VE testified that at the light level, such a person should be able to do the job of information clerk (approximately 2,000 of such jobs), ticket taker (approximately 1,683 of such jobs), and ticket seller (approximately 2,000 of such jobs). As for sedentary work, such a person should be able to do the job of dispatcher, other than emergencies(approximately 5,820 of such jobs), sorter (approximately 14,000 of such jobs), and data examination clerk (approximately 4,000 of such jobs).

The ALJ then varied the question in what he called hypothetical question B:

Please assume the same facts that I gave in hypothetical A. And more specifically for—this is a variation from that. Please assume the person may sit only 15 to 20 minutes at one time without standing. And may stand only 15 to 20 minutes at one time without sitting. And that the person uses a cane for ambulation. Would these changes effect [sic] the answer that you gave to hypothetical question A[?]

The VE testified that his answers would not change. The ALJ then asked the VE a third hypothetical question, which he called hypothetical question C:

Please assume the same facts that I gave you in hypothetical question B and in addition, assume that the person is moderately limited in maintaining concentration and attention for extended periods of time. Would that change effect [sic] the answer

that you gave to the previous hypothetical question?

The VE testified that it would not.

The ALJ then stated:

For hypothetical question D, please assume the same facts I gave you in hypothetical question C. And further assume that the person must avoid stooping, crouching, kneeling, or crawling. Would those changes effect [sic] the answer that you gave in the previous hypothetical question?

Again, the VE testified that his answer would not change.

## D. *ALJ'S FINDINGS*

The ALJ found:

1. The claimant met the disability insured status requirements of the Act on February 25, 1993, the date the claimant stated he became unable to work, and he continues to meet them through the date of this decision.

2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision, except for one day in 1995.

3. The medical evidence establishes that the claimant has degenerative disc disease, and he experiences residuals from a laminectomy, diskectomy, and compression laminectomy, which would be considered to be "severe" as defined by the Social Security Act and Regulations, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. The magnitude of the claimant's alleged pain and functional limitation is not credible as it is not supported by the medical evidence or relevant credibility factors.

5. The claimant has the residual functional capacity to perform the physical exertional and nonexertional requirements of work except for: frequently lifting and carrying more than 10 pounds at one time; occasionally lifting more than 20 pounds; sitting, walking, or standing for more than ½ hour to 1 hour at one time and 6 to 8 hours total; more than occasionally stopping, crouching, crawling, kneeling, or engaging in overhead reaching; engaging in activities which require extended concentration and attention; and ambulating without the use of a cane (20 C.F.R. § 404.1545).

6. The claimant is unable to perform his past relevant work as millwright and welder.

7. The claimant's residual functional capacity for the full range of light work is reduced by the restrictions listed in number 5, above.

8. The claimant is 42 years old, which is defined as a younger individual (20 C.F.R. § 404.1563).

9. The claimant has a high school education (20 C.F.R. § 404.1564).

10. The claimant does not have any acquired work skills which are transferable to the skilled or semiskilled work functions of other work (20 C.F.R. § 404.1568).

11. Based on an exertional capacity for light work, and the claimant's age, education, and work experience, section 404.1569 and Rule 202.20, Table No. 2, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

12. Although the claimant's additional nonexertional limitations do not allow him to perform the full range of light work, using the above-cited rule as a framework for decisionmaking, there are a significant number of jobs in the national economy which he could perform. Examples of such jobs are: 10,000 information clerk positions [1], 1,683 ticket taker positions, 2,000 ticket seller positions, 14,000 sorter positions, 5,820 dispatcher positions, and 4,000 data examiner clerk positions.

1. The Court notes that the transcript of the hearing reflects that the VE testified that there were 2,000 information clerk positions. The discrepancy makes no difference to this decision.

13. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 C.F.R. § 404.1520(f)).

## III. LAW AND STANDARD OF REVIEW

In order to be entitled to disability benefits, Moomey must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant. 20 C.F.R. § 404.1566 (1993).

Establishing disability under the Social Security Act is a two-step process. First, Moomey must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which have lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 1382(a)(3)(A), 423(d)(1)(A). Second, there must be a factual determination that the impairment renders Moomey unable to engage in any substantial gainful employment. *McNeil v. Califano,* 614 F.2d 142, 143 (7th Cir.1980).

The factual determination is made using a five-step test. 20 C.F.R. §§ 404.1520. The steps are examined as follows:

1. Is the claimant presently unemployed?

2. Is the claimant's impairment "severe"? (20 C.F.R. § 404.1521).

3. Does the impairment meet or exceed one of the list of specified impairment? (20 C.F.R. Part 404, Subpt. p.App. 1).

4. Is the claimant unable to perform his former occupation?

5. Is the claimant unable to perform any other work within the national economy?

An affirmative answer at any Step leads either to the next Step, or in the case of Steps 3 and 5 to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, stops the inquiry and leads to a determination that the claimant is not disabled. *Garfield v. Schweiker,* 732 F.2d 605 n. 2 (7th Cir.1984).

The claimant has the burden of production and persuasion on Steps 1-4. Once the claimant shows inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Tom v. Heckler,* 779 F.2d 1250, 1253 (7th Cir.1985); *Halvorsen v. Heckler,* 743 F.2d 1221, 1225 (7th Cir.1984).

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's findings with the Court's own assessment of the evidence. *Pugh v. Bowen,* 870 F.2d 1271, 1274 (7th Cir.1989). The Court must only determine whether the ALJ's findings are supported by substantial evidence. The Court must consider whether the record, as a whole, contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous. *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), *Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.) *cert. denied,* 479 U.S. 988, 107 S.Ct. 580, 93 L.Ed.2d 583 (1986).

## IV. ANALYSIS

Moomey raises three objections to the ALJ's decision: 1) that the ALJ erred in discounting the opinions of Moomey's attending physicians; 2)that the ALJ erred in evaluating Moomey's abilities and rejecting Moomey's complaints of pain; and 3) that the ALJ erred in this conclusion that Moomey is capable of substantial gainful employment. The Court will also address the additional evidence submitted to the Appeals Council by Moomey.

*A. Did the ALJ discount the opinions of Moomey's attending physicians?*

Moomey first argues that the ALJ discounted the opinions and diagnosis of his attending physicians: Dr. Schroeder, Dr. Trudeau, Dr. Russell, Dr. Helfer, and Dr. Stauffer. According to Moomey, the ALJ is not a licensed physician and it is not his duty to determine Moomey's medical condition.

Moomey also points to an August 3, 1995 note which stated that Moomey was not to work until further notice.

 The August 3, 1995 note was not before the ALJ. Moomey submitted the August 3 note to the Appeals Council after the hearing. Because the Appeals Council denied review of Smith's application, "the ALJ's decision became the final decision of the Secretary, 20 C.F.R. § 404.981[.]" *Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir.1994) (citing *Wolfe v. Shalala,* 997 F.2d 321, 322 (7th Cir.1993)). Thus, the Court will only consider the evidence before the ALJ. *Luna,* 22 F.3d at 689. Medical records submitted for the first time to the Appeals Council cannot be used as a basis for finding reversible error. *Id.* (citing *Wolfe,* 997 F.2d at 322 n. 3) (other citations omitted).

Under sentence six of 42 U.S.C. § 405(g), the district court may remand a case to the ALJ for him to consider additional evidence if "the evidence is new, material and there is good cause for not introducing it during the administrative proceeding." *Campbell v. Shalala,* 988 F.2d 741, 745 n. 2 (citing *Sears v. Bowen,* 840 F.2d 394, 399 (7th Cir.1988)). "Evidence is material if there is a reasonable possibility that it would have changed the outcome of the Secretary's determination." *Sears v. Bowen,* 840 F.2d at 400.

The August 3 note is not new and Moomey has not stated good cause for failing to incorporate it during the administrative proceeding. In addition to not being new evidence, Moomey has not demonstrated that the evidence is material as there is not a reasonable possibility that it would have changed the outcome.

First, the issue of whether a claimant is disabled is one left to the Commissioner. 20 C.F.R. § 404.1527(e). As stated in SSR 96–5p, 61 Fed.Reg. 34471, 34472 (1996):

> [T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance. Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and

thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.

Second, the note is conclusory and inconsistent with Dr. Schroeder's earlier opinion that Moomey could perform light work. Dr. Schroeder provides no basis for his change of position. *See Knight v. Chater,* 55 F.3d 309, 314 (7th Cir.1995) (doctor's treatment notes did not support his opinion that claimant was disabled).

Finally, Dr. Schroeder's opinion is inconsistent with the record as a whole, which supports a finding that Moomey can perform light work. *See Knight,* 55 F.3d at 314 ("Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence").

Moomey does not point to any evidence that was disregarded, other than the August 3 note which was not before the ALJ. In fact, the ALJ considered the limitations stated by Dr. Schroeder in May 1995, including the limitation that Moomey should not lift more than 25 pounds frequently and that he should not sit, stand, or walk for more than one hour at a time without changing positions. The ALJ found that this evidence did not support the claim of a debilitating impairment.

The ALJ also noted Dr. Stauffer's opinion that Moomey get a sedentary type occupation. The ALJ determined this opinion was not supported by the evidence. He found no indication that any of the other medical sources found Moomey to have such significant limitations. Additionally, Moomey himself admitted in October 1995 that he walked constantly because he would not stay in any one position for a prolonged period of time. Furthermore, Dr. Stauffer's examination of Moomey, while noting that Moomey had very little motion of the spine, also noted that he had negative straight leg raising and only a slightly decreased range of motion in his hip.

Nevertheless, even if the ALJ did improperly disregard Dr. Stauffer's opinion that Moomey could only engage in sedentary work, the VE testified that a significant number of sedentary jobs existed.

Therefore, the Court finds that the ALJ did not discount the opinions of Moomey's

physicians and the ALJ's decision is supported by substantial evidence.

**B.** *Did the ALJ err in evaluating Moomey's abilities and rejecting Moomey's complaints of pain?*

■■■ Moomey next argues that the ALJ disregarded his subjective complaints of pain. Moomey argues that there are objective findings regarding the amount of pain he experiences. He points to Dr. Trudeau's statement that Moomey "may have chronic pain syndrome in light of the length of time he has been symptomatic[.]" Dr. Helfer also commented on the amount of pain Moomey experiences. Moomey argues that the ALJ can only discredit a claimant's allegations of pain when the complaints of pain are inconsistent with the record as a whole. Because the record clearly indicates that Moomey is on medication for his pain and that his daily activities are limited due to his pain, the ALJ improperly discredited Moomey's complaints of pain.

ALJs, not reviewing courts, are in the business of making credibility determinations. *Imani v. Heckler,* 797 F.2d at 512. Therefore, the Court will not disturb the ALJ's credibility determinations unless they are "patently wrong." *Id.*

The procedure for evaluating a claimant's subjective complaints of pain is set forth in *Luna v. Shalala:*

> In evaluating a claimant's subjective complaints of pain, the ALJ must first determine whether the pain alleged is substantiated by objective medical evidence. 20 C.F.R. § 404.1529. If the allegation is not supported by medical evidence in the file, and the claimant indicates that the pain is a significant factor in his or her alleged inability to work, then the ALJ must obtain detailed descriptions of claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant. Social Security Ruling 88–13 ("SSR 88–13"). She must investigate all avenues presented that relate to pain, including claimant's prior work record, information and observation by treating physicians, examining physicians, and third parties. SSR 88–13. Factors that must be considered include the nature and intensity of claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medication, other treatment for relief of pain, functional restrictions, and the claimant's daily activities. *Id. Pope [v. Shalala],* 998 F.2d [473] at 485–86 [7th Cir.1993]. *See also Jones v. Shalala,* 10 F.3d 522, 525 (7th Cir.1993).

*Luna,* 22 F.3d at 691.

The ALJ followed the test as set forth above. First, he found an absence of an objective medical basis to support the degree of severity of Moomey's complaints. The ALJ noted that while Moomey regularly pursued medical care and regularly reported pain, there was no indication that his treating physicians restricted him from working or found significant limitations.

In addition to examining the objective medical evidence, the ALJ also reviewed Moomey's activities, medication and treatment history. The ALJ noted that Moomey engaged in a full range of daily activities. Although he did not report doing household chores, the ALJ noted that Moomey's living situation was such that another person was present to do the household chores. *See also Locher v. Sullivan,* 968 F.2d 725, 729 (8th Cir.1992) (the record did not support a need for the claimant's inactivity; while he did not do any household chores, the court found that this was not because claimant had attempted to do them and could not but because it was done for him by his parents). Moomey's activities included cooking, driving, walking, visiting his parents, receiving visitors and attending lodge meetings.

As for his medication, the ALJ noted that Moomey took Naproxen twice a day and Ibuprofen three times weekly. Moomey indicated that Ibuprofen reduced his pain from a nine on the pain scale to a three. Although he reported drowsiness, the ALJ found that this did not constitute a limiting side effect because of the infrequent dosage used. Moomey also testified that he had not received treatment for his back for four months prior to the hearing.

It should be noted that the ALJ did not conclude that Moomey was entirely incredi-

ble. Rather, in his final decision, the ALJ took into consideration Moomey's complaints. The ALJ merely found the extent of Moomey's allegations of pain were not credible. The Court finds that this determination was not "patently wrong."

Consequently, the Court finds there is substantial evidence in the record to support the ALJ's conclusion that Moomey was able to perform light work with certain limitations.

## C. Did the ALJ err in his conclusion that Moomey was capable of substantial gainful employment?

The Commissioner is required to establish that Moomey could perform other work in the national economy. Generally, the Commissioner satisfies its burden by enlisting the services of a vocational expert. The ALJ poses a hypothetical question to the vocational expert which attempts to describe the claimant's physical and/or mental impairments, along with his educational level and past work experience. Once the VE understands the claimant's situation, he will determine whether any jobs can be performed productively by such an individual. If such jobs exist in the national economy, the claimant will be found not "disabled" and denied relief.

Moomey argues that none of the jobs mentioned by the ALJ would allow him to move around and change positions as frequently as he would need to do. Moomey points to Dr. Schroeder's May 30, 1995 evaluation which articulates Dr. Schroeder's opinion that Moomey could not sit for more than an hour without a five minute rest period and that Moomey would have difficulty standing or walking for more than an hour without being able to change positions.

The hypothetical question posed by the ALJ to the VE asked the VE to assess the work capability of a person with Moomey's vocational factors, who was limited to light work, who needed to change positions from sitting to standing and return to sitting *each hour*. The VE testified that a significant number of light jobs and sedentary jobs would correspond to those limitations.[2] The

VE also testified that those light and sedentary jobs would remain even if the individual had to change positions every *15 to 20 minutes*.

The Court finds that the hypothetical questions posed by the ALJ are clearly supported by the medical evidence. Dr. Schroeder stated that Moomey would have to change positions every hour. Hypothetical A asked the VE to first assume the individual would have to change positions every hour and hypothetical B asked the VE to assume the individual would have to change positions every 15 or 20 minutes. In both instances, the VE listed testified that a significant number of jobs existed. Moomey does not provide any support for his claim that the jobs listed by the VE would not accommodate his need to change positions nor does he point to any medical evidence to support a claim that Moomey must change positions more frequently than every 15 to 20 minutes.

Thus, the Court finds that the hypothetical questions posed to the VE were supported by substantial evidence and therefore the VE's answers to the hypothetical question provides substantial evidence supporting the finding that Moomey can perform a significant number of other jobs.

## V. CONCLUSION

For the above reasons, all of the determinations made by the ALJ are supported by substantial evidence. Therefore, Defendant's Motion for Summary Affirmance is ALLOWED and Plaintiff's Motion for Summary Judgment is DENIED.

SO ORDERED.

CASE CLOSED.

---

**2.** *See Lee v. Sullivan,* 988 F.2d 789, 794 (7th Cir.1993) (1,400 jobs significant).