151 F.3d 1033
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Donald D. NESLUND, Plaintiff-Appellant,
v.
Kenneth S. APFEL, Commissioner of Social Security
Administration, Defendant-Appellee.
 No. 98-1158.
 United States Court of Appeals, Seventh Circuit.
 Argued June 2, 1998.
Decided Aug. 17, 1998.
 
 Appeal from the United States District Court for the Northern District of Illinois, Western Division. No. 97 C 50074 P. Michael Mahoney, Magistrate Judge.
 Before Hon. JOEL M. FLAUM, Hon. DANIEL A. MANION, Hon. DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Donald Neslund was "disabled" within the meaning of the Social Security Act for five years beginning in 1990, but he lost that designation in 1995 after the Social Security Commissioner determined his condition had improved. Neslund appealed the Commissioner's decision, but in 1996 an administrative law judge upheld it, concluding that "beginning February 1995, [Neslund] had the residual functional capacity to perform [a] full range of light work." After exhausting his administrative appeals, Neslund filed suit in federal district court seeking to overturn the Commissioner's final determination. Both Neslund and the Commissioner moved for summary judgment before a Magistrate Judge, who granted the Commissioner's motion and dismissed Neslund's case. Now Neslund appeals from that decision, which we affirm.
 
 I.
 
 2
 By all accounts Donald Neslund had significant physical limitations for several years. That's because in 1990 he fell while stacking shelves in a grocery store and seriously injured his back. It got so bad that he had to have back surgery, during which metal screws were inserted and some fusion took place. Not surprisingly, after a hearing in April 1992 Neslund qualified for Social Security benefits based on his disability, but the Commissioner changed that decision in February 1995 when it appeared--at least to the Commissioner's satisfaction--that Neslund's condition had improved substantially.
 
 
 3
 Neslund does not dispute that his condition improved somewhat after his 1992 disability hearing. Six months after the hearing, Neslund's neurosurgeon noted in his medical records that Neslund was attending school full-time, that he was off any analgesics, and that if he restricted his walking he would be "reasonably comfortable." At times, however, progress came slowly or was interrupted. That happened in 1993 when Neslund injured his neck in a car accident; for some time afterward, his neck went numb when he sneezed. Still, the record reveals that by September 1994 Neslund again was well on the road to recovery. His internist at the time, Dr. Gail Sanson, reported that while Neslund complained of some pain, an examination of him was "otherwise unremarkable." Three months later another physician, Dr. Rodriguez (performing what he termed a "disability examination"), reported that Neslund had a muscle spasm, but was able to bear his weight without a cane. Dr. Rodriguez concluded that he "did not see ... a disabling medical condition at this point in time." On January 10, 1995, a state agency physician reviewed Neslund's medical records and concluded that Neslund's improvement had increased his ability to work. Just a few days later, yet another physician (Dr. W.C. Dannenmaier, an orthopedist) seemed to confirm that conclusion. In response to Neslund's complaints of knee discomfort, Dr. Dannenmaier reported no abnormalities besides a "hint of spurring, suggestive of some mild osteoarthritis, but this is very minimal." Dr. Dannenmaier recommended the use of a bicycle for exercise. One month later (in February 1995), the Social Security Administration officially determined that Neslund was no longer disabled under the Act, meaning he was no longer entitled to disability benefits.
 
 
 4
 Following the Commissioner's decision, Neslund continued to see Dr. Dannenmaier, who reported in July 1995 that Neslund had complained of intermittent knee pain. Dr. Dannenmaier noted in his medical records that he believed Neslund had aggravated his knee by walking up and down hills in Mexico, where Neslund visited for three weeks. Apparently Neslund had chosen a "very hilly and mountainous town" (the doctor's words) in Mexico because Neslund was pursuing a Master's degree in anthropology, a course of study which kept him in school for up to 8.5 hours a day, five days a week. By September 1995, Neslund had hired an attorney to contest the Commissioner's decision cutting off his benefits, and had returned to Dr. Sanson explicitly for help in trying to reverse that decision. The report completed by Dr. Sanson following that examination is less optimistic about Neslund's return to the workforce. Among other things, Dr. Sanson noted that Neslund could lift and carry ten pounds frequently and twenty pounds occasionally, but could not sit and walk for more than one hour each during an eight-hour day.
 
 
 5
 Neslund formally appealed the Commissioner's decision revoking his disability status and presented his case to an administrative law judge. After conducting a hearing and taking evidence, the ALJ agreed with the Commissioner that Neslund was no longer disabled within the meaning of the Act. From Neslund's brief (filed by his attorney; he is not appearing pro se), it is not easy to discern his principal argument on appeal. But it appears Neslund simply disagrees with the ALJ's conclusion that, based on the evidence as a whole, he had improved enough to lose his "disability" status under the Social Security Act and the benefits accompanying that status.
 
 II.
 
 6
 The only question before us is whether the ALJ correctly determined under the law that Neslund is no longer disabled and entitled to benefits under the Social Security Act. The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical ... impairment." 42 U.S.C. § 423(d)(1)(A). The impairment itself must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).
 
 
 7
 As we noted above, Neslund was "disabled" and entitled to benefits from 1992 to 1995, when his status was changed by the Commissioner. An individual once designated as disabled under the Act can lose that status if his impairment is lessened to the extent that he can engage in substantial gainful activity. 42 U.S.C. § 423(f)(1)(B). That--says the Commissioner--is what happened in this case, and the agency already has convinced an ALJ that it is correct, and further convinced a district court that the ALJ's decision is supported by substantial evidence. On appeal we essentially repeat the exercise performed by the district court, Jones v. Shalala, 10 F.3d 522, 523 (7th Cir.1993), and while this may appear duplicative, it nonetheless is the nature of the administrative scheme established by Congress. See Groves v. Apfel, 148 F.3d 809, 1998 WL 344883, at * 2 (7th Cir., June 30, 1998).
 
 
 8
 The record evidence described above tells us that while Neslund was not in perfect health, his condition was improving and certainly had improved considerably since he was termed disabled. Of course, the exact degree of improvement is crucial, because we need to determine if Neslund was fit for work (light work would qualify if it is "substantial gainful activity"). The evidence suggests that Neslund could have returned to work somewhere, if not his previous employer, and at least performed light duty tasks. Prior to the Commissioner's decision, no physician had concluded that Neslund was unable to return to work. Dr. Larson described Neslund's pain as tolerable as early as 1993; Dr. Sanson conducted an "unremarkable" examination of Neslund in September 1994; three months later, Dr. Rodriguez, asked to perform a consulting examination of Neslund, explicitly concluded that Neslund had a muscle spasm but was not disabled; finally, Dr. Dannenmaier reported in July 1995 that Neslund was able to spend three weeks in Mexico on an anthropological excursion in which he climbed up and down a "very hilly and mountainous town." All of this evidence appears in the record relied upon by the ALJ, and none of it comes close to contradicting his conclusion that Neslund could return to work.
 
 
 9
 Against this evidence Neslund argues that the ALJ issued a cursory decision that improperly weighed his "credibility" in concluding that he was no longer disabled. At eight pages, the ALJ's decision was hardly cursory, a point we might have made at oral argument had Neslund complied with Circuit Rule 30(b)(3) and included the decision in his brief's short appendix. He did not, causing us to take his word (since the government did not include it in its brief, either) until we uprooted the decision from the record. What Neslund did include in his brief was much of his testimony at the hearing in which he detailed his daily physical difficulties. We have no doubt that Neslund continues to experience some pain, but we also have no doubt that he is disputing the ALJ's ability to weigh credible medical evidence over his (admittedly) self-serving testimony. But under the regulations accompanying the Social Security Act, not cited by Neslund in his brief, this is exactly what the ALJ must do--give substantial weight to the medical evidence and opinions submitted, unless specific, legitimate reasons constituting good cause are shown for rejecting it. See 20 C.F.R. §§ 404.1527(c)-(d). Good cause for discounting medical evidence is not provided by the claimant's testimony that he does not agree with the physicians who have treated and examined him. If it were, then there simply would be little concern for medical opinion in the first place.
 
 
 10
 If his own assessment about his condition is not enough to displace the ALJ's decision, Neslund points us to one of the later (September 1995) assessments provided by Dr. Sanson. Recall that in September 1994 Dr. Sanson conducted an examination of Neslund and found his condition "unremarkable." One year later, after noting that Neslund had hired an attorney and was trying to retain his disability benefits, Dr. Sanson concluded that Neslund could not stand at all and certainly could not bend, squat, crawl or climb. Nor could Neslund sit or walk for more than one hour each during an eight-hour day. These restrictions might well rule out any light work and perhaps even sedentary work as well. But the ALJ concluded that other evidence (the reports of every other physician who had examined Neslund) outweighed Dr. Sanson's findings, and we are in no position (even if we wanted to) to re-weigh that evidence to determine if our answer would be different. See Jones, 10 F.3d at 523 (our task is to determine if the ALJ's decision is supported by substantial evidence, which a "reasonable mind" would accept as adequate, not to reweigh the evidence in toto).
 
 
 11
 At this point all we can say is that Dr. Sanson's late assessment (inconsistent with her previous medical evaluations) does not convince us that the ALJ's decision lacks substantial record support. Unlike Dr. Sanson's report, none of the other medical records ever stated that Neslund could not stand, which he certainly did in Mexico when he climbed hills. Dr. Rodriguez, a consulting physician, in fact determined that Neslund did not suffer a "disabling medical condition," and there are good reasons to favor her opinion over a patient's regular doctor. See Stephens v. Heckler, 766 F.2d 284, 289 (7th Cir.1985) ("The regular physician ... may lack an appreciation of how one case compares with other related cases. A consulting physician may bring both impartiality and expertise."). In short, it appears that the ALJ discounted Dr. Sanson's report because it was inconsistent with other (convincing) medical evidence, something the judge certainly was entitled (and, indeed, employed) to do. See 20 C.F.R. § 404.1527(c); see also Knight v. Chater, 55 F.3d 309, 314 (7th Cir.1995).
 
 
 12
 Nor for that matter is Dr. Sanson's report consistent with a March 1995 Social Security Administration self-assessment completed by Neslund, in which he reported that he attended school (where sitting is obviously necessary) five days a week "up to 8 1/2 hours a day," or for that matter with record evidence that Neslund dressed himself, mowed the grass, read books, and prepared dinner several nights a week for his family. Neslund makes no effort to explain why these activities (along with the physicians' evaluations) are not "substantial evidence" of his ability to work. Indeed, at oral argument his attorney instructed us that nowhere in the record would we find any evidence of Neslund's ability to do light work. But evidence of Neslund's full days at school appears in the record, and in Neslund's own handwriting, no less. At this point our conclusion has to be the same as the ALJ's--that sadly Neslund joins the ranks of many who once experienced a painful back injury likely to cause intermittent pain for some time to come. It makes his participation in the workplace more difficult than for others, but it does not make him "disabled" and entitled to benefits in place of work. AFFIRMED.