**Jerald L. FARLEY, Plaintiff–Appellant,**

v.

**Larry G. MASSANARI,\* Acting Commissioner of the Social Security Administration, Defendant–Appellee.**

**No. 01–1703.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 3, 2001.

Decided Oct. 29, 2001.

---

1. The duty to defend and indemnify arises only for bodily injury covered by the policy.

\* Acting Commissioner Massanari is substituted as appellee for his predecessor Kenneth S. Apfel. *See* Fed. R.App. P. 43(c)(2).

Before BAUER, COFFEY, DIANE P. WOOD, Circuit Judges.

## ORDER

When he was forty-one years old, Jerald Farley applied for social security disability insurance benefits claiming that he could no longer work because of chronic pain and limited movement in his back, shoulders, arms, and hands stemming from recurrent tendinitis, carpal tunnel syndrome, and tennis elbow. An administrative law judge found that Farley was not entitled to benefits because, although Farley's impairments were severe and prevented him from returning to his former work, he could perform a significant number of jobs that existed in his state's economy. The district court affirmed, and Farley appeals. Farley's primary contention on appeal is that the vocational expert's testimony concerning his ability to perform other work was ambiguous, and thus did not constitute substantial evidence to support the ALJ's decision. We affirm.

## Background

Farley was born in 1955, and he has an eleventh-grade education. For nearly fifteen years, he worked as an operator and set-up person on a plastic molding machine and as a printing press helper—jobs that frequently entailed heavy lifting and repetitive gripping. His medical problems began in 1989, when he sprained his back lifting a heavy bucket of solvent. Because of that injury, he was no longer able to perform his duties as a press helper, and his employer gave him a less strenuous position that involved inspecting, sorting, and packing bags. Nonetheless, in 1991 Farley was injured again when several boxes weighing over 300 pounds fell on top of him at work. Since that accident he has suffered from persistent pain in his shoulders, and doctors diagnosed him as having chronic rotator cuff tendinitis. Because of his back injury and the tendinitis, Farley cannot lift his arms above his head or pick up anything weighing more than four to five pounds. In 1995 Farley also began experiencing pain and numbness in his elbows, hands, wrists, and other joints. Shortly thereafter he was diagnosed with carpal tunnel syndrome affecting both wrists and hands, ulnar nerve entrapment and cupital tunnel syndrome or epicondylitis ("tennis elbow") in both elbows, and fibromyalgia, a condition characterized by chronic joint pain.

Farley continued to work until August 1996, when his employer's company reorganized and terminated his position. In

November 1996 Farley had surgery on both wrists to relieve his carpal tunnel syndrome. In early 1997 he also underwent surgery on his right elbow. Despite the surgeries he still experienced pain and numbness in his elbows, wrists, and hands, which made it difficult for him to write and perform tasks like opening jars and counting change. Medical reports indicate that further surgeries were not guaranteed to improve those conditions and that repetitive arm and hand motions were likely to exacerbate them.

Farley filed for disability benefits in May 1997, alleging a disability onset date of August 14, 1996, his last day of work. The application was denied, and Farley requested a hearing before an ALJ. The hearing was held in August 1998. At the hearing Farley and a vocational expert ("VE") testified. Farley testified extensively about his medical problems and their effect on his life and ability to work. After Farley testified, the ALJ called the VE to testify regarding the type of work that Farley, given his impairments, could perform at various strength levels. The ALJ asked the VE a series of hypothetical questions for which the VE was to assume an individual of Farley's age, education, and work experience, with the following limitations: (1) the work must not involve fine dexterity of either hand but can involve gross use of the hands, (2) the work must not involve forceful gripping or operation of vibrating tools, (3) the work must be simple and repetitive in nature, and (4) the work must not involve overhead work or unusual stress. Given those limitations the VE opined that Farley was not able to perform his previous work but could perform other unskilled jobs including sedentary cashier and surveillance monitor positions. The VE identified 3,290 and 114 of those jobs respectively.

In a decision dated November 6, 1998, the ALJ concluded that Farley was not disabled for purposes of disability benefits. The ALJ found that Farley's impairments were severe and prevented him from performing his past work. The ALJ concluded that despite those impairments Farley retained the residual functional capacity to perform sedentary work that is simple and repetitive in nature and does not involve unusual stress, overhead reaching, repeated forceful gripping, operation of vibrating tools, or the need for fine dexterity. At the fifth step of his analysis, see 20 C.F.R. § 404.1520(f), the ALJ relied on the VE's testimony in finding that Farley could perform a significant number of unskilled, sedentary jobs, such as a cashier or surveillance monitor, and that more than 3,400 of those jobs existed in the Indiana economy. The Appeals Council denied Farley's request for review of the ALJ's decision, and Farley filed a complaint in federal district court pursuant to 42 U.S.C. § 405(g). The district court affirmed the ALJ's decision on the ground that the VE's testimony provided substantial evidence that Farley could engage in work that existed in the economy.

## Analysis

We will affirm the ALJ's decision if it is supported by substantial evidence. See 42 U.S.C. § 405(g). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). It is up to the ALJ—and not this court—to weigh the evidence, resolve conflicts, and make independent findings of fact as long as the ALJ does so reasonably. *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir.2000); *Wolfe v. Shalala*, 997 F.2d 321, 326 (7th Cir.1993).

Farley argues that the VE's testimony concerning the jobs that he could perform at the sedentary-strength level was ambiguous, and thus does not constitute substantial evidence to support the ALJ's finding at the fifth step. When asked to identify jobs that someone with Farley's age, education, work experience, and particular limitations could perform at the sedentary level, the VE initially identified 3,290 cashier positions and 4,322 assembler positions. The parties do not dispute that the VE then went on to retract his testimony regarding the assembler positions. But they dispute whether, based on the following testimony, the VE also retracted his testimony regarding the cashier positions:

> At the sedentary level with regard to cashiers, there are 3,290. Assemblers, there are 4,322.... Let me rethink that, because at the sedentary level I think almost all of those are going to have repetitive gripping. Let me exclude that category. There would be the position of, of a surveillance-type monitor, or a surveillance guard, 114. I think that pretty much would identify the sedentary level with those restrictions.

Farley contends that the VE's statements "almost all of those [jobs] are going to have repetitive gripping" and "let me exclude that category" show that he intended to also retract his reference to the cashier positions, or at the very least, those statements render his testimony ambiguous. If those positions were excluded, then the only other jobs that would match Farley's limitations would be the 114 surveillance monitor positions proposed by the VE, which Farley argues is not a significant number.

We do not believe that the VE intended to exclude the category of sedentary cashier jobs when he made those statements or that the VE's testimony was ambiguous. First, the VE stated that he was excluding "that category," which suggests that he only meant to withdraw his testimony regarding the category of assembler positions to which he had just referred. Second, and more significantly, the VE's subsequent testimony clarified whether he meant to include or exclude the cashier positions. Immediately after the VE made the statements at issue, the ALJ posed a question demonstrating that he understood the VE to mean that the VE had misspoken only about the assembler— and not the cashier—positions, and the VE did not disagree:

> Q: So *all you got left is a cashier* and 114[ ][1] surveillance guards.

> A: There may be a few other assorted positions, but the numbers are not very large.

> Q: Okay.

> A: When you're, when you're eliminating the fine dexterity and continuous grip at the sedentary level, you're pretty much eliminating positions.

(emphasis added.) Shortly thereafter Farley's non-attorney representative cross-examined the VE, and her cross-examination shows that she understood the VE to have opined that Farley could work as a sedentary cashier. She stated, "[i]n every category you have mentioned a cashier position" and then asked the VE questions about cashier positions.

---

**1.** At oral argument Farley's counsel pointed out that the audio tape of the hearing ended in the middle of the ALJ's question (between "114" and "surveillance guards") and suggested that testimony may have been omitted from the transcript as a result. Although the tape ended at an inopportune moment, it appears from the transcript that the ALJ waited until the tape was changed before finishing his question and that the transcript accurately captured the hearing testimony.

Moreover, on cross-examination the VE expressly stated that he had earlier excluded the assembler positions but not the cashier positions. When asked whether the number of jobs would be reduced because Farley could not operate vibrating tools and machinery or be exposed to temperature changes or other hazardous conditions, the VE responded, "I believe I tried to make the adjustments in the ... areas of assembly at the medium and light level, for vibrating tools or repetitious grip. I don't think that [those additional parameters] would affect the cashiers at all." We hold that the ALJ reasonably construed the VE's testimony as establishing that Farley was able to perform unskilled sedentary jobs including the 3,290 cashier positions.

Farley also argues that the 3,290 cashier positions should be disregarded because he lacked the residual functional capacity to perform cashier work. We will not independently assess whether Farley was able to perform cashier work or reassess the VE's credibility on that point. *See Jones v. Shalala,* 10 F.3d 522, 526 (7th Cir.1993). The question before this court is limited to whether the VE's testimony constituted substantial evidence supporting the ALJ's finding at step five. We conclude that it did.

The ALJ found that Farley was unable to perform work requiring either fine dexterity in both hands or greater-than-sedentary-level strength. Sedentary work is limited to:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking

and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a). The VE opined that Farley could perform a number of sedentary cashier positions that do not require fine finger dexterity. According to the VE, that is because "[m]ost of the cashiering positions now are done with the gross movement of something across the scanner.... like what you would have at a Wal–Mart or something like that." The VE did not identify what percentage of the cashier positions he proposed still required manual input on a cash register and therefore might not be appropriate for Farley. Nor did he address the amount of standing those cashier positions may require.

Although the VE's testimony could have been more precise, the VE considered the limitations set forth by the ALJ and concluded that they did not preclude Farley from doing most sedentary cashier work. Farley's representative had the opportunity to—and did—cross-examine the VE regarding the extent to which his opinion accounted for Farley's loss of fine dexterity and other restrictions. The VE responded that they had little impact on Farley's ability to do most cashier work. Thus, we cannot say that the ALJ's finding is unsupported by substantial evidence.

At oral argument Farley raised an additional argument that warrants comment. He argued that the VE's testimony did not constitute substantial evidence because it conflicted with the job descriptions for cashiers in the Dictionary of Occupational Titles ("DOT"). This alleged conflict arises because it appears that the Wal–Mart–type cashier positions proposed by the VE are classified by the DOT as "light" jobs, and the ALJ found that Farley was incapable of performing light work. We note that there is some question in this circuit as to whether an ALJ is entitled to rely on the VE's testimony even

if it is inconsistent with the DOT. *Compare Powers v. Apfel,* 207 F.3d 431, 436–37 (7th Cir.2000) (stating that an ALJ "is entitled to rely on expert testimony that contradicts the description of sedentary work in the [DOT]"), *with Young v. Sec'y of Health and Human Servs.,* 957 F.2d 386, 391–92 (7th Cir.1992) (remand was necessary where VE's testimony conflicted with job descriptions in the DOT); *Tom v. Heckler,* 779 F.2d 1250, 1255–56 (7th Cir.1985) (same). But Farley did not make this argument in his brief to this court, and therefore we deem the argument waived. *Ricci v. Arlington Heights,* 116 F.3d 288, 291–92 (7th Cir.1997) (holding that argument raised at oral argument that was not included in brief is waived); *United States v. Rodriguez,* 888 F.2d 519, 524 (7th Cir. 1989) (stating that "[a] point raised for the first time at oral argument, when the appellant is in no position to reply, comes too late").

In sum, the VE testimony upon which the ALJ based his finding was not ambiguous and supported the ALJ's finding that Farley could perform a significant number of other jobs including the 3,290 cashier positions.

AFFIRMED. .