**Billie J. KNIGHT, Plaintiff–Appellant,**

v.

**Shirley S. CHATER, Commissioner of Social Security,\* Defendant–Appellee.**

No. 94–3458.

United States Court of Appeals, Seventh Circuit.

Argued April 25, 1995.

Decided May 24, 1995.

---

\* Pursuant to Federal Rule of Appellate Procedure 43(c) and Pub.L. No. 103–296, Shirley S. Chater is substituted as the named defendant-appellee for Donna E. Shalala.

Steven K. Robison, Montgomery, Elsner & Pardieck, Seymour, IN (argued), for Billie J. Knight.

Jeffrey L. Hunter, Asst. U.S. Atty., Indianapolis, IN, Donna Morros Weinstein, Edward J. Kristof (argued), Department of Health and Human Services, Region V, Office of Gen. Counsel, Chicago, IL, for Donna E. Shalala.

Before FLAUM, RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

Billie J. Knight seeks further judicial review of the Social Security Administration's ("SSA") decision to deny her disability benefits. The SSA denied both her initial request and her request for reconsideration. An administrative law judge upheld that decision on the ground that Ms. Knight was able to perform sedentary work similar to the work she performed in her former occupation. The Appeals Council declined to review the ALJ's decision. The district court affirmed the agency decision on the ground that it was supported by substantial evidence. Ms. Knight now appeals the district court's decision. She submits that she is entitled to disability benefits because the decision that she can perform sedentary work is not supported by substantial evidence, and the record demonstrates that there is no work in the economy that she can perform.

## I

## BACKGROUND

### A. *Facts*

Ms. Knight was forty-six years old at the time of the administrative hearing. She had graduated high school, had completed a keypunch training course in 1976, and had attended truck driving school in 1982. She testified that, before 1990, she had held approximately twenty different jobs. Her past employment included operating a restaurant, feeding calves on a farm, working as a factory packer, supervising prison food services, driving a truck, and working as a clerk and keypunch operator for several businesses and offices. In April 1990, she claimed that muscle pain in her back and legs and a feeling of general weakness rendered her disabled.

The administrative record contains the following medical history. In November 1989, Ms. Knight complained of right thigh pain, fever, and pelvic discomfort. Dr. Gregory Sutton examined her at the Indiana University Medical Center and discovered a cystic mass on her anterior abdominal wall between two rectus muscles. The cyst was drained; no evidence of cancer was discovered. Ms. Knight underwent surgery again in July 1990 after complaining of further pain; multiple cysts were discovered in her ovaries, and a nodule was discovered in the sheath of the left rectus muscle. The cysts were benign, but the nodule proved to be metastatic adenocarcinoma. In response to a questionnaire by the Disability Determination Office, Dr. Richard Wiethoff, the surgeon, noted that, on the basis of an examination on August 1, 1990, Ms. Knight had healed well and did not report fatigue. He described her prognosis as guarded.

In August 1990, Ms. Knight also underwent several post-operative physical examinations by Dr. Charles Wolter, an internist and gastroenterologist. Dr. Wolter stated in response to the Disability Determination Of-

fice's questionnaire that Ms. Knight was easily fatigued. He also described her prognosis as guarded. In a detailed letter to Dr. Wiethoff, dated August 9, 1990, Dr. Wolter concluded that Ms. Knight was "a well-developed, well nourished white female in no acute distress at the time of this [physical] exam." R.12 at 134. Because the extent of the cancer had not yet been determined, Dr. Wolter recommended further tests and monitoring.

In December 1990, cancer was discovered in Ms. Knight's bladder. Ms. Knight underwent surgery. There was no evidence of metastases, and Ms. Knight was discharged by Dr. Karl McAleese. Dr. McAleese indicated that, aside from the cancer which was removed, Ms. Knight was in "good general health," and recovering well. He later wrote that, although Ms. Knight was totally disabled from December 3, 1990 through February 15, 1991, he found no evidence of residual functional limitations.

In June 1991, Ms. Knight underwent a colon scan that revealed a benign polyp. It was removed. Ms. Knight complained of painful spasms in her leg when she sat for too long a time or walked too much, and sought treatment from Dr. Harold Spencer. In July 1991, Dr. Spencer conducted tests which suggested that Ms. Knight had a degenerative disc disease in her lower back. He recommended rehabilitation exercises as treatment. On July 23, 1991, Dr. Spencer indicated, in his treatment notes, that Ms. Knight could walk on either heels or toes, had equal reflexes in deep tendon areas, and had no dermatographic loss of pinprick sensation. He recommended that she have a bone scan. On August 6, 1991, Dr. Spencer noted that Ms. Knight's bone scan was normal and recommended that she continue her back rehabilitation exercises. On August 20, 1991, Dr. Spencer completed a residual functional capacity assessment form which noted that, in an eight-hour day, Ms. Knight could sit for four hours, stand for two hours, and walk for two hours. In addition, she occasionally could lift up to twenty pounds and perform repetitive actions with both hands. The report also noted that her prognosis was poor.

## B. *Earlier Proceedings*

Ms. Knight filed for disability benefits in August 1990. She claimed to have been disabled since April 19, 1990, around the time when she was first diagnosed with cancer. The SSA rejected her application. In August 1991, a hearing was held before an administrative law judge. Ms. Knight was represented by counsel and testified at the hearing. She testified that she did not believe that she could perform any work after April 1990. She recalled becoming worn out after using a garden tiller for fifteen minutes. She noted that she had reduced her housekeeping by fifty percent and had quit her hobby of quilting because she was unable to sit for fifteen and twenty-minute intervals at her sewing machine. She also complained of incontinence. The ALJ determined that, because Ms. Knight was able to perform sedentary work similar to her job as a keypunch operator or clerk, the agency correctly denied her benefits. The ALJ declined to rely upon Dr. Spencer's residual functional capacity report. He noted that Dr. Spencer's report was not consistent with his treatment notes. The ALJ further noted that Dr. Spencer's report was inconsistent with the greater weight of the evidence in the case, which, the ALJ concluded, indicated that Ms. Knight was capable of performing sedentary work. Ms. Knight sought review in the district court; the court upheld the ALJ's decision on the ground that it was supported by substantial evidence.

On appeal, Ms. Knight now submits that she is entitled to disability benefits because the decision that she can perform sedentary work is not supported by substantial evidence, and because the record demonstrates that there is no work in the economy that she can perform.

## II

## DISCUSSION

Under the relevant statute, to be disabled means to be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be ex-

pected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A physical impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(C).

■ The Social Security regulations provide a five-step inquiry to determine whether a claimant is disabled:

(1) whether the claimant is currently employed;

(2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals one of the impairments listed by the SSA, see 20 C.F.R. § 404, Subpt. P, App. 1;

(4) whether the claimant can perform her past work; and

(5) whether the claimant is capable of performing work in the national economy.

See 20 C.F.R. § 404.1520; *Herron v. Shalala*, 19 F.3d 329, 333 n. 8 (7th Cir.1994); *Binion v. Shalala*, 13 F.3d 243, 247 (7th Cir.1994). If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy. *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir.1993); *Lee v. Sullivan*, 988 F.2d 789, 792 (7th Cir.1992). The ALJ determined that Ms. Knight was not currently employed and that, although she had a severe impairment, it was neither among, nor equivalent to, those listed by the SSA. The ALJ then determined, based on the physicians' reports and Ms. Knight's testimony, that Ms. Knight could still do the type of clerical work she had done in the past. Accordingly, he found her to be not disabled. See 20 C.F.R. § 404.1520(e).

*A. Substantial Evidence*

■ Ms. Knight first argues that the ALJ's decision is not supported by substantial evidence. We must affirm the agency's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Herron*, 19 F.3d at 333. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Green v. Shalala*, 51 F.3d 96, 100–01 (7th Cir.1995). We shall not reevaluate the facts, reweigh the evidence, or substitute our own judgment for that of the SSA. *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir.1994); *Herron*, 19 F.3d at 333.

■ Sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.... Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). The record supports the ALJ's finding that Ms. Knight can do sedentary work. The objective medical evidence in the record before us reveals no residual functional limitations from Ms. Knights' cancer. The record does not indicate that Ms. Knight has experienced recurrent cancer or that she is being treated with radiation or chemotherapy. Further, the doctors' reports in this record indicate that Ms. Knight healed well from her surgeries and suffered no residual functional limitations.

Dr. Spencer indicated in his residual capacity assessment form and treatment notes that Ms. Knight suffers from a degenerative disc disease which causes chronic lower back pain. Treatment involved back exercises and medication that precludes Ms. Knight from working around moving machinery. Dr. Spencer also assessed Ms. Knight's eight-hour workday activity as limited to sitting for four hours, standing for two hours and walking for two hours. Although the ALJ considered Dr. Spencer's medical evidence, it discounted Dr. Spencer's assessment of Ms. Knight's workday activity as unsubstantiated by Dr. Spencer's treatment notes.

■ The ALJ must give substantial weight to the medical evidence and opinions submitted, unless specific, legitimate reasons constituting good cause are shown for rejecting it. 20 C.F.R. §§ 404.1527(c)-(d); *Wash-*

*ington v. Shalala,* 37 F.3d 1437, 1440 (10th Cir.1994); *Edwards v. Sullivan,* 985 F.2d 334, 337 (7th Cir.1993) (noting that SSA must consider all credible medical evidence). Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence. 20 C.F.R. § 404.1527(c); *see Luna v. Shalala,* 22 F.3d 687, 690 (7th Cir. 1994) (noting that ALJ did not err in discounting "cursory" medical evidence that was inconsistent with more recent examination performed by doctor who had been treating claimant for many years); *see also Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1029 (10th Cir.1994) (finding that ALJ properly discounted medical opinion of treating physician because his "own office records did not support his later expressed opinion that [the] plaintiff was totally disabled").

The record supports the ALJ's conclusion that Dr. Spencer's treatment notes did not support his opinion that Ms. Knight was disabled. His treatment notes stated that Ms. Knight could walk on either heels or toes, had equal deep tendon reflexes, experienced no loss of pinprick sensation, and had a normal bone scan. Dr. Spencer's prescribed treatment consisted of rehabilitative back exercises and medication. The ALJ was allowed to conclude that these notes do not provide adequate clinical support for Spencer's opinion on the residual capacity form. *See, e.g., Chamberlain v. Shalala,* 47 F.3d 1489, 1494 (8th Cir.1995) ("[A] treating physician's opinion is not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data.") (quotations and citations omitted); *Cutlip v. Secretary of Health & Human Servs.,* 25 F.3d 284, 287 (6th Cir.1994) (per curiam) ("[T]reating physician's opinions ... are only accorded great weight when they are supported by sufficient clinical findings[.]"); *Whitney v. Schweiker,* 695 F.2d 784, 788 (7th Cir.1982) ("The weight given a physician's statement depends upon the extent to which it is supported by medically acceptable clinical and laboratory diagnostic techniques.") (quotations and citations omitted). His conclusion is particularly justified because Ms. Knight's other physicians provided well-documented medical tests and treatment notes stating that, other than her cancer, Ms. Knight was in good health and that she experienced no residual functional limitations.

■ The ALJ also rejected Ms. Knight's testimony that she could not perform sedentary work as self-serving and not credible. An ALJ may discount subjective complaints of pain that are inconsistent with the evidence as a whole. However, the ALJ may not disregard subjective complaints merely because they are not fully supported by objective medical evidence. *Siemers v. Shalala,* 47 F.3d 299, 301 (8th Cir.1995); *see Binion,* 13 F.3d at 247. The absence of objective medical evidence is just one factor to be considered along with:

    (a) the claimant's daily activities;

    (b) the location, duration, frequency and intensity of the pain;

    (c) precipitating and aggravating factors;

    (d) type, dosage, effectiveness and side effects of medication;

    (e) treatment other than medication;

    (f) any measures the claimant has used to relieve the pain or other symptoms; and,

    (g) functional limitations and restrictions.

20 C.F.R. § 404.1529(c)(3); *see also Marciniak v. Shalala,* 49 F.3d 1350, 1354 (8th Cir. 1995); *Binion,* 13 F.3d at 247; *Pope,* 998 F.2d at 482 (indicating that objective medical evidence is not always required to corroborate statements about the intensity, persistence, and functional effects of subjective complaints of pain). Ms. Knight testified that she could no longer do hard work, had cut down on her household chores by fifty percent, and had given up her hobby of quilting because she was unable to sit for twenty minutes at her sewing machine. She also complained of bladder difficulties, leg spasms, fatigue, and general pain. However, when questioned by the ALJ, Ms. Knight admitted that she could carry a ten-pound sack of potatoes around a ten-foot by four-foot area once every half hour. Under these circumstances, we cannot say the ALJ erred in discounting Ms. Knight's testimony. *See Herron,* 19 F.3d at 335 (stating that court

will not upset ALJ's credibility determinations on appeal unless they are "patently wrong" because the ALJ "is in the best position to observe witnesses"); *see also Luna,* 22 F.3d at 690 (same); *Edwards v. Sullivan,* 985 F.2d 334, 338 (7th Cir.1993) ("[D]eterminations of credibility often involve intangible and unarticulable elements which impress the ALJ, that, unfortunately leave no trace that can be discerned in this or any other transcript.") (quotations and citations omitted).

The record does not demonstrate how the cancer or urinary tract infections prevented Ms. Knight from performing sedentary work. Her allegations of pain and inability to work are unsubstantiated. The medical evidence provides only two sources of support for Ms. Knight's claim: Dr. Wolter's statement that Ms. Knight is "easily fatigued," and Dr. Spencer's assessment that Ms. Knight can sit, stand, or walk for only one hour at a time. When evaluated in light of the whole record, neither of these reports so clearly establishes that Ms. Knight is disabled that a contrary opinion must be considered unreasonable. *See Walker v. Bowen,* 834 F.2d 635, 642–43 (7th Cir.1987). The ALJ's decision was supported by substantial evidence.

**B.** *Bypass Step Four*

■ Ms. Knight next submits that, because computers have replaced keypunch machines in the workplace, she is unable to perform her past work as a keypunch operator and thus may bypass step four pursuant to 20 C.F.R. §§ 404.1565(a) and 416.965(a). In support, Ms. Knight relies upon *Kolman v. Sullivan,* 925 F.2d 212, 213 (7th Cir.1991), for the proposition that, if one's past relevant work has disappeared from the national economy, "the fact that the claimant could

still perform it if it did exist is neither a rational ground for denying benefits at Step 4, nor one intended by the Secretary's regulations." Appellant's Br. at 17.

The claimant in *Kolman* suffered from inadequate personality disorder, a psychiatric disorder manifested by lack of interest in other people, lack of motivation, inability to handle even minimally stressful conditions, and an overly-methodical approach to tasks. The claimant had several jobs, the last being an informational security position that had been specially created by a federal jobs-training program that was defunct at the time the claimant applied for benefits. Kolman's disability precluded him from maintaining a normal security job because he could not intervene in a dangerous situation. Therefore, he required a job like that created by the defunct federal program. We held that Kolman satisfied step four because "a makework training job is not the type of work to which the regulations refer. It is a temporary job designed to equip the employee for real work—not a career that a person disabled from pursuing a real career can be expected to pursue." *Id.* at 213. We then remanded to permit the agency to determine whether similar non-intervention security jobs existed in the national economy. Ms. Knight's former job as a keypunch operator-clerk was neither a temporary nor training job. Therefore, *Kolman* does not apply here.

The government points out that *Kolman* analyzed 20 C.F.R. §§ 404.1565(a) and 416.965(a), which allow a claimant to bypass step four if his past relevant work disappeared from the national economy fifteen years or more before the claimant's application for benefits. *See* 925 F.2d at 213–14.[1] Though Ms. Knight's last employment as a keypunch operator was less than fifteen

---

1. The regulations provide:

(a) General. "Work experience" means skills and abilities you have acquired through work you have done which show the type of work you may be expected to do. Work you have already been able to do shows the kind of work that you may be expected to do. We consider that your work experience applies when it was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity.... A gradual change occurs in most jobs so that after 15

years it is no longer realistic to expect that skills and abilities acquired in a job done then continue to apply. The 15–year guide is intended to insure that remote work experience is not currently applied.... If you have acquired skills through your past work, we consider you to have these work skills unless you cannot use them in other skilled or semi-skilled work that you can now do. If you cannot use your skills in other skilled or semi-skilled work, we will consider your work background the same as unskilled. However, even if you

years ago, Ms. Knight submits that sections 404.1565(a) and 416.965(a) still apply and excuse her from proving step four because the advent of computers has hastened the demise of keypunch machines. There is, however, another consideration that makes it unnecessary for us to confront her submission. The record does not permit a characterization of her past work as solely that of a keypunch operator. On her disability form, Ms. Knight described her job as including clerical duties of filing insurance claims, helping people with problems, a little lifting, and general duties. Thus, her clerical tasks would qualify as past relevant work. *See* 20 C.F.R. § 416.965(a) (stating that work that "lasted long enough for [the claimant] to learn to do it" may qualify as "work experience"). Because clerical work similar to that which she was trained to do has not been replaced by computers, we cannot accept Ms. Knight's argument.[2]

## Conclusion

The decision of the SSA is supported by substantial evidence. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

---

have no work experience, we may consider that you are able to do unskilled work because it requires little or no judgment and can be learned in a short period of time.
20 C.F.R. §§ 404.1565(a), 416.965(a).

2. Because we affirm the ALJ's decision that Ms. Knight did not pass step four, we need not consider step five.