165 F.3d 32
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Deborah G. MICHAELS, Plaintiff-Appellant,
v.
Kenneth S. APFEL, Commissioner of the Social Security
Administration, Defendant-Appellee.
 No. 98-1404.
 United States Court of Appeals, Seventh Circuit.
 Argued July 8, 1998.
Decided Oct. 27, 1998.
 
 Appeal from the United States District Court for the Southern District of Indiana, New Albany Division. No. 97 C 335. Sarah Evans Barker, Chief Judge.
 Before Hon. JESSE E. ESCHBACH, Hon. JOEL M. FLAUM, Hon. ILANA DIAMOND ROVNER, Circuit Judges.
 
 ORDER
 
 1
 In 1993, Deborah G. Michaels, who was then 44 years old, stopped working as an office manager, and unsuccessfully sought disability benefits under the Social Security Act, 42 U.S.C. §§ 416(i), 423(d), alleging pain in her back, legs and hips; numbness in her right foot and hands; and muscle contractions in her right ear. An ALJ found two of Michaels' impairments to be severe: left heel bursitis, and degenerative disc disease (for which she had surgery in 1986 and 1993) with spinal stenosis and nerve root compression. However, the ALJ also found that Michaels was capable of performing sedentary work with certain restrictions, and thus was not disabled. The Appeals Council denied review. The district court affirmed the denial of benefits, and Michaels now appeals, contending that the ALJ's findings were not supported by substantial evidence. We reverse and remand because the ALJ failed to provide logical reasoning, supported by substantial evidence, for rejecting the uncontradicted opinion of Michaels' treating physician that she needed to recline frequently throughout the day, a restriction which would necessarily render her "disabled" as defined under 42 U.S.C. § 423(d)(1)(A).
 
 Statutory Framework
 
 2
 Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. Binion v. Shalala, 13 F.3d 243, 247-48 (7th Cir.1994). Michaels must show that she was unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).
 
 
 3
 The Social Security regulations enumerate the familiar five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. 20 C.F.R. § 404.1520. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." Id. at § 404.1520(b). Because Michaels was not working, the ALJ next addressed whether she had any severe impairments or combination of impairments which "significantly limit[ed] ... physical or mental ability to do basic work activities." Id. at § 404.1520(c). Here, the ALJ found that Michaels suffered from severe impairments. Third, the ALJ found that Michaels severe impairments did not meet any of the listed in the regulations (20 C.F.R. § 401, pt. 404, subpt. P, app. 1), and thus her condition was not considered to be automatically or per se disabling. He went on, then, to review Michaels' "residual functional capacity." At this fourth step, the ALJ found that Michaels could not perform her past relevant work as an office manager. Id. at § 404.1520(e). The burden of proof then shifted at step five to the Commissioner to establish that Michaels, in light of her age, education, job experience and functional capacity to work, was capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f). Books v. Chater, 91 F.3d 972, 979-80 (7th Cir.1996). It is at step five that the ALJ in the present case found that Michaels was not disabled and was capable of performing sedentary work.
 
 Standard of Review
 
 4
 On review, this court is limited to a determination of whether the ALJ's findings were supported by substantial evidence. See Diaz v. Chater, 55 F.3d 300, 305 (7th Cir.1995). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). In our substantial evidence determination, we review the entire record; however, we do not substitute our judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. See Diaz, 55 F.3d at 305, 308; Luna v. Shalala, 22 F.3d 687, 689 (7th Cir.1994).
 
 
 5
 On appeal, Michaels contends that the ALJ's findings that she could perform sedentary work with certain restrictions were not supported by substantial evidence because the ALJ improperly rejected the uncontradicted medical opinion given by the treating physician. We agree.
 
 
 6
 Treating Physician's Uncontradicted Opinion
 
 
 7
 As the ALJ in this case acknowledged, a treating physician's opinion regarding the nature and severity of a medical condition should receive "controlling weight" if it is "well-supported by medically acceptable" findings and techniques, and "is not inconsistent with the other substantial evidence" of record. 20 C.F .R. § 404.1527(d)(2). See also Bean v. Chater, 77 F.3d 1210, 1214 (10th Cir.1995).
 
 
 8
 Dr. Thomas W. Marshall, the orthopedic surgeon who treated Michaels, opined that she needed "to spend a fair amount of her time reclining through the daytime due to increased complaints of lumbar spine pain radiating to both hips." In a letter submitted to the ALJ after the hearing, Dr. Marshall explained:
 
 
 9
 I think that her problem is related to degenerative disk disease of the lumbar spine with persistent nerve root compression. The physiological explanation for the pain is that as she stands, the area which accommodates her spinal cord narrows, and with standing or sitting for just a short period of time, enough pressure is placed against the spinal cord that it causes her to have neurological complaints. The pressure is subsequently relieved by lying down and this alleviates her back and leg discomfort to some degree.
 
 
 10
 Dr. Marshall concluded that "[i]t is unlikely that she can be employed in any capacity due to the short period of time that she can stand, sit, or walk.... As noted, the only positional change which really gives her any relief is lying down, and if she could not recline frequently through the daytime, then a job requiring any other position would be difficult for her to maintain." Nothing in the record contradicts these medical findings and explanations regarding the physical limitations caused by Michaels' condition.[1] Dr. Marshall's explanation was well-reasoned and sufficiently detailed to support his opinion that Michaels needed to recline frequently throughout the day. See 20 C.F.R. § 404.1527(d)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions."). Cf. Lee v. Sullivan, 945 F.2d 687, 692 (4th Cir.1991) (per curiam ) (upholding denial of benefits where "[n]o physician suggested that plaintiff's condition required ... reclining.").
 
 
 11
 In choosing to give little or no weight to Dr. Marshall's opinion that Michaels required the frequent-reclining restriction, the ALJ pointed to Michaels' daily activities, finding that they undermined any suggestion from either Michaels or her doctor that she was in severe pain and needed to recline intermittently throughout the day. On this basis, the ALJ concluded that "the opinions of Dr. Marshall are not to be given controlling weight. His restrictions in the claimant's residual functional capacity ignore her reported activities of daily living, in particular the claimant's testimony that she watches television for three hours per day, reads for three hours per day, embroiders for three hours per day and makes puzzles two hours per day."
 
 
 12
 We find this rationale insufficient for several reasons, and we cannot affirm the denial of benefits based on illogical reasoning that fails to "build an accurate and logical bridge between the evidence and the result." Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir.1996). See also Groves v. Apfel, 148 F.3d 809, 811 (7th Cir.1998); J.C. Penney Co. v. NLRB, 123 F.3d 988, 996 (7th Cir.1997). See also 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons ... for the weight we give your treating source's opinion.").
 
 
 13
 The ALJ cannot, without sufficient explanation, discount an uncontradicted, dispositive medical opinion. Herron v. Shalala, 19 F.3d 329, 333 (7th Cir.1994). Significantly, this is not a case of "dueling doctors" where the ALJ was required to evaluate and resolve a conflict between the opinions of treating and consulting physicians. Cf., e.g., Books v. Chater, 91 F.3d 972, 979 (7th Cir.1996) (ALJ must decide which doctor to believe). Medical evidence, especially that from a treating physician, "may be discounted if it is internally inconsistent or inconsistent with other evidence" in the record. Knight v. Chater, 55 F.3d 309, 314 (7th Cir.1995) ("[T]his is not a case of dueling doctors. This case does not involve experts with a thorough knowledge of a disease versus a perhaps parochial and biased general practitioner."); see also Micus v. Bowen, 979 F.2d 602, 608 (7th Cir.1992). Moreover, the vocational expert (VE) testified that if Michaels needed to recline frequently during the workday, there were no jobs in the regular or national economy that she could perform with this limitation. We must conclude that the ALJ's reasoning does not support his conclusion. See, e.g., Herron, 19 F.3d at 335-36 ("The ALJ seemed to consider lying down and napping as the same activity and therefore assumed that Herron was offering contradictory testimony. However, lying down and napping are not synonymous with each other, and therefore this testimony does not support the ALJ's credibility determination.").
 
 
 14
 Several of the activities which the ALJ found were inconsistent with a need to recline were one-time events that aggravated Michaels' condition and required her to receive additional medical care. For example, she aggravated her condition once when she danced at a wedding, played with her dog, and tried to move furniture. There is no indication that any of these activities occurred more than once. Unsuccessful attempts at physical activity, particularly where the activity triggers the need for immediate medical care and is not repeated, cannot logically support a finding that the claimant is capable of performing that level of activity at work each day.
 
 
 15
 In addition, the ALJ made several factual errors--always against Michaels and in favor of denying benefits--in describing Michaels' daily activities. See Sarchet, 78 F.3d at (reversing ALJ's denial of benefits and remanding for new findings where ALJ's decision "on matters of fact is unreliable because of serious mistakes or omissions"). For example, the ALJ erred in describing the amount of time Michaels spent each day watching TV, embroidering, or working crossword puzzles, and erred in finding that Michaels did not and could not recline while performing these activities.
 
 
 16
 Moreover, contrary to the ALJ's reasoning, the day-to-day activities Michaels described are not inconsistent with Michaels' testimony and Dr. Marshall's medical opinion that Michaels needed to--and did in fact--recline frequently throughout the day. Activities pointed to by the ALJ, such as watching TV, reading, embroidering or working crossword puzzles all can be (and were, according to Michaels' uncontradicted testimony) performed in a 45-degree reclining position. Specifically in regard to reclining, Michaels testified:
 
 
 17
 [ALJ:] What's the most comfortable way to be then?
 
 
 18
 A Not in a lay-down position, but where my head is about like this and--
 
 
 19
 Q * * * [I]t looks like you were pointing at, like, a 45-degree angle, to me.
 
 
 20
 A Yes.
 
 
 21
 Q Is that about right?
 
 
 22
 A Yes.
 
 
 23
 Q So reclining at a 45-degree angle?
 
 
 24
 Q Yes, on my side, not--
 
 
 25
 * * *
 
 
 26
 * * *
 
 
 27
 Q Lying on your side at a 45-degree angle gives you some relief?
 
 
 28
 A Yes.
 
 
 29
 Q How long can you stay in that position?
 
 
 30
 A Pardon me?
 
 
 31
 Q How long can you stay in that position?
 
 
 32
 A I don't know, because I move and wiggle all the time.
 
 
 33
 Q Well, that's all right. If you move and wiggle all the time and you're in that position, how long can you stay there?
 
 
 34
 A Well, I make myself get up so that I can't sit so that I try to--I want to try to get the muscles strong.
 
 
 35
 Michaels' attorney also questioned her about reclining:
 
 
 36
 [Attorney] When you watch your three hours of TV, what position are you in when you do that?
 
 
 37
 A Lay down.
 
 
 38
 * * *
 
 
 39
 * * *
 
 
 40
 Q When you're reading for the two hours a day or so, what position are you in to do that?
 
 
 41
 A In the laying....
 
 
 42
 * * *
 
 
 43
 * * *
 
 
 44
 Q Do you end up lying down while company is there?
 
 
 45
 A Yes, if they're there very long.
 
 
 46
 * * *
 
 
 47
 * * *
 
 
 48
 Q How much of the time during a day, say between 8:00 in the morning and 5:00 in the evening or afternoon, are you in that reclining position?
 
 
 49
 * * *
 
 
 50
 * * *
 
 
 51
 A In a nine-hour [day]--seven-and-a-half.
 
 
 52
 Q Okay. That's not all at one time?
 
 
 53
 A No, because then I start to feel like I'm going numb, and especially if I go over on my back, I just go numb.
 
 
 54
 We see no inconsistency between this testimony and Dr. Marshall's medical explanation of why reclining frequently throughout the day was necessary. Cf. Taylor v. Chater, 118 F.3d 1274, 1278 (8th Cir.1997) (reversing and remanding denial of benefits with direction to award benefits where there were "no inconsistencies in the record that justify" the ALJ's finding that claimant's testimony that she had to lie down two or three times a day was not credible, notwithstanding the fact that the medical record did not indicate claimant had ever told any of her doctors that she needed to lie down during the day).
 
 
 55
 Similarly, it is inaccurate and an exaggeration to find that Michaels' typical household chores proved she was not disabled. Sporadic performance of some household tasks does not establish that the person is capable of engaging in substantial physical activity. See Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir.1993). For example, Michaels testified that she cooks, but only simple foods such as cocoa wheats, and never something like Thanksgiving dinner. Although she washes dishes, it is never more than a few, and sometimes the best she can do is soak them. Although she makes the bed each day, all this entails is pulling up the covers. She only takes out trash "[i]f it's not heavy," and does only small amounts of laundry. In her trailer home, she does not vacuum, sweep, mop, or do yard work. Instead, family helped with these tasks. For example, her daughter came over and vacuumed, swept and mopped for Michaels' birthday. She does not shop for groceries; instead, her live-in boyfriend does the shopping. In regard to walking, the medical records show that Dr. Marshall instructed Michaels to walk as much as the could tolerate, which was usually several blocks each day. Thus, her testimony of daily activities does not undermine or contradict either her own testimony, or Dr. Marshall's opinion, regarding her need to recline to alleviate severe pain.
 
 
 56
 On remand, the agency should re-examine the evidence and make new findings to support a decision either to grant or deny benefits. The ALJ should pay particular attention to any medical opinions regarding the need to recline frequently, along with other restrictions, such as no stooping. See Social Security Ruling 96-9p (July 2, 1996) (providing that "[a]n ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations. A complete inability to stoop would significantly erode the unskilled sedentary occupational base...."). We also suggest that the SSA transfer the case to a different ALJ on remand. See Sarchet, 78 F.3d at 309.
 
 
 57
 The judgment of the district court, upholding the Commissioner's decision to deny benefits to Michaels, is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion, and these proceedings are to be held as expeditiously as possible.
 
 
 
 [1]
 Because Michael's attorney submitted this letter to the ALJ after the hearing, there were no questions asked about it during the hearing, although both the ALJ and the Appeals Council considered the letter