John CONVERSE, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of the Social Security Administration, Defendants.

No. CIV. 3:00CV0262AS.

United States District Court,
N.D. Indiana,
South Bend Division.

Nov. 29, 2000.

other signs or symptoms of injury were noted at this time.

Charles J. Myers, Kokomo, In, for Plaintiff.

Clifford D. Johnson, Asst. U.S. Atty., South Bend, IN, for Defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

Plaintiff ("Converse") seeks review of the Commissioner's decision denying him certain Social Security benefits. Pursuant to 42 U.S.C. § 405(g), this Court may review the final decision of the Commissioner.

## I. PROCEDURAL HISTORY

On May 14, 1996, Converse filed an application for a period of disability, disability insurance benefits and supplemental security income pursuant to Title II and Title XVI of the Social Security Act. Converse's initial application and petition for reconsideration were denied by the Social Security Administration. On July 18, 1997, Converse was granted an initial hearing before an Administrative Law Judge ("ALJ") and was represented by counsel at that hearing. On June 14, 1998, a supplemental hearing was held. On July 17, 1998, the ALJ issued a final decision denying Converse's claim for disability benefits.

The ALJ made the following findings with respect to Converse's claim: 1) Converse had not worked since April 30, 1995; 2) Converse suffered from a severe bipolar impairment; 3) Converse's impairments did not meet or equal the requirements of

an impairment found in the Listing of Impairments; 4) Converse has a residual functional capacity to perform medium work of a simple and repetitive nature which does not involve more than superficial interaction with others and does not involve unusual stress and 5) Converse's impairment did not prevent him from performing his past relevant work and thus is not under a disability as defined by the Social Security Act. On August 4, 1998, Converse filed a request for review of the ALJ's decision. On December 15, 1999, the Appeals Council denied the request for review.

## II. FACTUAL BACKGROUND

Converse, who was twenty eight years old at the time he filed for disability benefits, has a high school education and has worked in various general labor positions, including assembler, sheet metal worker and job site inspector. Converse contends that he is unable to work as a result of his current medical condition. Converse has not been employed since April 30, 1995.

Converse was diagnosed with Bipolar II Disorder on September 14, 1995. He began treatment for his problems at the Four County Counseling Center as a result of this diagnosis. During the period of treatment, Converse was reviewed by several health care professionals each giving varying opinions as to the diagnosis of his current condition.

On December 4, 1995, Converse was evaluated by Dr. David G. Jarmon, Ph.D. Dr. Jarmon opined that Converse's profile was not clearly reflective of bipolar disorder, although it could not be ruled out. (Tr. 181). Dr. Jarmon opined that the Converse's symptoms more closely reflected a diagnosis of dysthymic disorder. Dr. Jarmon believed that Converse would

benefit from a combination of medication and therapy. (Id.).

Dr. John L. Yarling, M.D., treated Converse on eleven separate occasions from January 1996 to March of 1997. On June 19, 1996, Dr. Yarling submitted a status report diagnosing Converse with Dysthymic disorder and giving him a GAF rating of 70 which is a mild form of depression. (T.R.196,201). In that report Dr. Yarling found that Converse was making progress in that he seemed somewhat less frustrated with himself. (T.R. 201).

On July 7, 1997, Dr. Yarling was asked to respond to a series of questions submitted by Converse's attorney, Charles Myers. In his response, Dr. Yarling stated that Converse suffered from mild depression symptoms but was uncertain as to the effects of various neurological symptoms that he may be suffering from. Dr. Yarling was concerned that certain neurological symptoms could cause a more pronounced form of depression.[1] Dr. Yarling did not evaluate Converse after March 11, 1997. Additionally, Dr. Yarling stated that his brief contacts with Converse did not offer any insights regarding what limitations he might have either socially or vocationally. (T.R. 60)

On August 25, 1997, Converse was examined by Dr. Danny Bao, M.D. Dr. Bao performed a complete neurological examination. (T.R. 233) In diagnosing Converse's complaints of depression and seizures, Dr. Bao opined that Converse suffered from post encephalitis with transient seizure disorder, along with some dysthymic bipolar component. (T.R. 233–236).

On December 2, 1997, Converse was given a neurological evaluation by Dr. Bhu-

---

1. Dr. Yarling stated that "I am now of the opinion that the GAF score of 70 did accurately reflect his level of depressive symptoms. However, such a score in no way reflects his neurological disorder (i.e., organic brain disorder); in receiving those symptoms, I believe that scores of 45–50 are appropriate with an average of 50."

pendra Shah. (T.R. 237–238). Dr. Shah found that Converse was doing well suffering no seizures since the age of twelve and he would not have any limitations from a physical or neurological standpoint. (T.R. 238). Additionally, Dr. Shah stated, "any limitations would be from a psychiatric aspect." (Id.).

On June 8, 1998, Mr. Steven Carney, MSW and a staff psychiatrist, submitted a "mental residual functional capacity assessment" detailing Converse's ability to perform certain functions. Mr. Carney examined Converse on numerous occasions beginning on September 14, 1995 until the filing of the assessment on June 8, 1998. The assessment states that Converse has the ability to remember locations and carry out work-like procedures, carry out very short and simple instructions, sustain an ordinary work routine without special supervision and make simple work-related decisions. (T.R. 68). The assessment also states that Converse has the ability to interact with the general public and fellow co-workers. (T.R. 69).

In that assessment, Mr. Carney also states that although Converse can maintain a job initially, due to the illness when assessed on an ongoing basis many defects appear. (T.R. 70). Mr. Carney states that "Converse does not demonstrate the ability to maintain himself without interruptions and breaks, he is easily confused by details or changes, he seems easily distracted, he is easily frustrated by instructions and is unable to organize himself without intervention from others." (T.R. 70). Additionally, Mr. Carney found that Converse did not have the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (T.R. 68). Finally, Mr. Carney noted that Converse's recent efforts to maintain employment have failed. (T.R. 70)

## III. STANDARD OF REVIEW

■ The ALJ's finding that Converse is not disabled must be upheld if it is supported by substantial evidence in the record. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir.2000) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). A federal court reviewing the Commissioner's decision is not free to decide the facts anew, re-weigh the evidence, or substitute its judgment for that of the Commissioner to decide whether a claimant is disabled under the statute. *Id.* However, a reviewing court may not simply rubber stamp the Commissioner's decision without a critical review of the evidence. *Clifford v. Apfel* 227 F.3d 863, 869 (7th Cir.2000)

## IV. DISCUSSION

Converse contends that the ALJ's decision to deny him disability benefits was not supported by substantial evidence. Specifically, Converse contends that the 1) the ALJ erred in failing to give the appropriate weight to the medical evidence in determining Converse's Residual Functional Capacity ("RFC") and 2) the ALJ failed to show that Converse was able to perform his past relevant work.

■ Under the Social Security Act, a claimant is entitled to benefits if he establishes that he is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(D). In determining disability status, the Secretary uses a five-step inquiry set forth in the Social Security regulations guide. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir.2000) *Allen*

*v. Sullivan*, 977 F.2d 385 (7th Cir.1992). The ALJ must consider the applicant's claim in the following sequence:

(1) whether the claimant is currently employed; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one listed by the Secretary; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing any work in the national economy. *Clifford* 227 F.3d at 868; citing *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir.1995).

"An affirmative answer leads either to the next step, or on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford* 227 F.3d at 868. The initial burden in steps one through four is on the plaintiff; only at step five does the burden shift to the Commissioner. *Id.*

### A. Residual Functional Capacity

Converse contends that the ALJ's finding that he had the residual functional capacity or ("RFC") to perform his past relevant work as an assembler and laborer or other relevant work is unsupported by the evidence. RFC is an assessment based upon all of the relevant evidence of what a claimant can still do despite limitations. 20 C.F.R. § 404.1545(a). This assessment does not equal a determination of disability but rather helps to evaluate the types of work available to one with particular limitations. Id. The final responsibility for deciding a claimant's RFC rests with the ALJ. 20 C.F.R. §§ 404.1527(e)(2) & 404.1546.

At the hearing, the ALJ determines the RFC by considering all relevant evidence which includes: descriptions and observations (by the claimant and third parties, including physicians) of claimant's limitations, such as pain, which go beyond symptoms, statements as to what a claimant can still do, and medical reports. 20 C.F.R. §§ 404.1545(a) & 404.1546. In this case the ALJ determined that Converse had a RFC to perform medium work of a simple and repetitive nature which does not involve more than superficial interaction with the general public, co-workers, and supervisors and does not involve unusual stress. (T.R. 25)

Converse contends that the ALJ failed to give appropriate weight to Dr. Yarling's assessment in developing the RFC for Converse. In July of 1997, Dr. Yarling opined that Converse may have a GAF rating closer to the 45–50 range when ascertaining symptoms of Converse's neurological disorder. However, Converse was given a neurological examination by Dr. Shah in December of 1997 and found that Converse would not have any limitations from a physical or neurological standpoint. (T.R. 238). Dr. Yarling's lowering of the GAF rating was based solely on his opinion that Converse may have symptoms of a neurological disorder. The ALJ found that as a result of further neurological testing by Dr. Shah, Converse's GAF rating of 70 was an accurate finding on which to base the RFC. (T.R. 26)

Additionally, Converse's GAF rating remained in the 70 range throughout his treatment by Dr. Yarling.[2] In fact in the same report in which Dr. Yarling opined that a diagnosis of neurological symptoms could change the GAF rating, he stated that a GAF rating of 70 accurately re-

---

**2.** Converse was assigned a GAF score of 70 when he was first evaluated by Mr. Carney, such a score is indicative of mild symptoms and would not support a finding of disability.

(T.R. 165). In June 19, 1996, Dr. Yarling submitted a report which opined that Converse had a GAF of 70.

flected the extent of Converse's depressive symptoms.

In determining Converse's RFC the ALJ assigned greater weight to the opinions of Mr. Carney because he had the opportunity to examine and comment on Converse's recent condition and had greater insight into his social and vocational limitations. In the July 1997 report, Dr. Yarling stated that his brief contacts with Converse offered him no insight into what limitations Converse might have either socially or vocationally. Thus, the ALJ was well within his discretion to weigh these statements appropriately and assign greater weight to the evaluation of Mr. Carney and Dr. Shah in determining the RFC. *Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993), Walker v. 834 F.2d at 640.

■ This Court is somewhat troubled by the fact that the ALJ failed to fully discuss and articulate in his findings Mr. Carney's seemingly inconsistent analysis of Converse in the "mental residual functional capacity assessment" in determining the RFC. The ALJ placed great weight on the assessment by Mr. Carney to determine Converse's RFC. (T.R. 25). The assessment states that Converse has the ability to remember locations and carry out worklike procedures, carry out very short and simple instructions, sustain ordinary work routine without special supervision and make simple work-related decisions. (T.R. 68). The assessment also states that Converse has the ability to interact with the general public and fellow co-workers. (T.R. 69). These criteria are established in the context of Converse's capacity to sustain the activities over a normal workday and work week and on an ongoing basis. (See Assessment Summary Conclusions at T.R. 68).

However, the ALJ failed to address several important criteria addressed in Mr.

Carney's assessment which was so heavily relied upon. Social Security Ruling 96–8p requires that an ALJ articulate findings with respect to a claimant's residual functional capacity to perform certain work-related activities:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record
>
> 61 Fed.Reg. 34474, 34478.

In *Clifford v. Apfel* 227 F.3d at 871, the Seventh Circuit noted that an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion." See also; *Herron v. Shalala* 19 F.3d 329, 333 (7th Cir.1994). "While internal inconsistencies may provide good cause to deny controlling weight to a treating physicians opinion, the ALJ must adequately articulate his reasoning for discounting the treating physician's opinion." *Clifford* at 871. The Court found that the ALJ failed to explain certain inconsistencies in the treating physician's findings. *Id.*

In this case the ALJ has failed to address several findings made in Mr. Carney's assessment. In the assessment, Mr. Carney found that Converse could not sustain ten of the twenty categories on an ongoing basis.[3] More specifically, Mr. Carney found that Converse did not have

---

**3.** See Mental Residual Functional Capacity Assessment Transcript P 68–70

the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.[4] This fact is crucial to the ALJ's decision making process in that few employers would retain an employee that failed to meet the minimum requirement of showing up for work on a regular basis.

The ALJ is required to discuss Converse's ability to perform sustained work activities on an ongoing basis. *Lawson v. Apfel*, 2000 WL 683256 at *4 (S.D.Ind. May 25, 2000). However, the ALJ has failed to explain why he believes that Converse can maintain a normal work week in the presence of Mr. Carney's finding that Converse did not retain such ability.[5] In light of the fact that the ALJ failed to discuss Mr. Carney's assessment in his findings, the ALJ failed to adhere to the requirements set out by the Social Security Ruling 96–8p. Specifically, the ALJ must address in his discussion how Mr. Carney's report supports the conclusion that Converse can perform and sustain work activities on a regular and ongoing basis. Therefore the ALJ must reevaluate and discuss whether all of Mr. Carney's findings have be given their appropriate weight.

**B. Converse's ability to perform past work or other relevant work**

Converse contends that the ALJ failed to demonstrate at step four of the five step analysis that he was capable of performing his past relevant work. Step 4 requires the claimant to show that he cannot perform his past relevant work. 20 C.F.R. § 404.1520(b)-(f); See Also *Clifford* 227

F.3d at 868. The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner. *Id.* citing *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir.1995).

Converse challenges the ALJ's finding that he can perform his past relevant work of an assembler or a laborer.[6] However, Converse's contention that he cannot perform his past work cannot be properly evaluated until the ALJ determines a RFC based on the entire report submitted by Mr. Carney. In determining step four, the Social Security Regulations state the following:

> Your impairment(s) must prevent you from doing past relevant work. If we cannot make a decision based on your current work activity or on medical facts alone, and you have a severe impairment(s), we then review your *residual functional capacity* and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled. (emphasis added)

20 C.F.R. § 404.1520(e) (4–1–00 Edition)

Thus, before the ALJ can determine whether step four is met he must determine Converse's RFC which includes a discussion of all relevant portions of Mr. Carney's report. This is not to say that the burden of proof changes to the Commissioner but rather that an accurate RFC is needed to determine whether Converse can in fact perform his past relevant work.

---

4. Additionally, Converse was found not to be able to work in coordination with or proximity to others without being distracted and the ability to maintain attention and concentration for extended periods.

5. The ALJ bases his finding that Converse can maintain a normal work week on the fact that he can do normal household chores, visit rela-

tives and drive an automobile. (T.R. 26) However, the discussion fails to mention Mr. Carney's assessment.

6. The ALJ determined that Converse's past jobs as an assembler and as a laborer did not require him to perform any tasks precluded by the (RFC) assessment as set out above. (D's Statement of Case at P.12)

**1052** 

█] Once an accurate RFC is determined, the ALJ may then elicit the testimony of a vocational expert in the form of a hypothetical question which must fully set forth the claimant's impairments to the extent that they are supported by the evidence of record. *Hedderman v. Apfel,* 1999 WL 759476 at *8, 63 Soc.Sec.Rep.Ser. 402 (N.D.Ill. Sep 09, 1999) (NO. 98 C 6448) See *Herron v. Shalala,* 19 F.3d 329, 337 (7th Cir.1994); *Meredith v. Bowen,* 833 F.2d 650, 654 (7th Cir.1987). The hypothetical question posed by the ALJ to the vocational expert must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record. *Cass v. Shalala,* 8 F.3d 552, 556 (7th Cir.1993); (citation omitted). However, the question need not take into consideration every detail of the claimant's impairments especially if the record demonstrates that the vocational expert reviewed all the evidence prior to the hearing. *Cass,* 8 F.3d at 556; (citations omitted).

### III. CONCLUSION

Based on the foregoing review of the record in this case, this Court finds that the Administrative Law Judge failed to adequately discuss Mr. Carney's findings in the Mental Functional Capacity Assessment. Accordingly, the Agency's decision is **REMANDED** to the Social Security Administration to determine whether Mr. Carney's findings were adequately assessed and developed in determining Converse's Residual Functional Capacity (RFC). **IT IS SO ORDERED.**