**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 13, 2017
Decided August 14, 2018

*Before*

DIANE P. WOOD, *Chief Judge*

DANIEL A. MANION, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 17-1696

| | |
|---|---|
| TAMERA S. JOHNSON, <br>    *Plaintiff-Appellant*, <br><br> *v.* <br><br> NANCY A. BERRYHILL, <br> Acting Commissioner of Social Security <br>    *Defendant-Appellee*. | Appeal from the United States District Court for the Northern District of Indiana, Fort Wayne Division. <br><br> No. 15-CV-310 <br><br> Susan L. Collins, <br> *Magistrate Judge*. |

**O R D E R**

Tamera Johnson suffers from fibromyalgia and degenerative disc disease and appeals the district court's judgment upholding the denial of her applications for disability insurance benefits and supplemental security income. The doctor who most recently treated Johnson, Dr. William Hedrick, opined that she had severe limitations, which a vocational expert confirmed would compel a finding of disability. The administrative law judge did not give controlling weight to Dr. Hedrick's opinion on the grounds that it was inconsistent with earlier evidence in the record. Johnson seeks judicial review of that decision. The ALJ gave sufficient reasons for discounting Dr.

Hedrick's opinion, and the ALJ's conclusion is supported by substantial evidence. We affirm.

Johnson applied for benefits claiming that her fibromyalgia, degenerative disc disease, and pain in her back and abdominal area rendered her unable to work after October 2012. Prior to that, Johnson had a long and steady work history. She had worked as a security guard, a warehouse worker, and most recently as a retail sales clerk. Johnson lost her sales clerk position in 2011 because she could not meet the demands of the job. She continued to look for work for 18 months but was unsuccessful.

Dr. Vijay Kamineni, a consulting physician for the agency, examined Johnson in November 2012. He provided a medical source statement relaying Johnson's statement that she could not sit or stand for thirty minutes or carry more than twenty pounds, though he did not endorse Johnson's statement. Later that December, a physician for the agency reviewed Johnson's medical records and completed a residual functional capacity assessment, though without examining her. This doctor concluded that Johnson could occasionally lift or carry 20 pounds, frequently carry 10 pounds, and stand and/or walk for six hours and sit for six hours during an eight-hour workday.

Dr. Thomas Miller began treating Johnson in February 2013. Dr. Miller diagnosed Johnson with sciatica, a nerve issue that causes pain in the affected leg. He ordered an MRI, which revealed signs of degenerative disc disease. Dr. Miller also noted that Johnson had moderate pain from degenerative conditions in her spine and peripheral neuropathy, which is pain from nerve damage generally affecting the hands and feet. In March 2012 Johnson saw Dr. Miller for abdominal pain, at which point he noted that Johnson's musculoskeletal exam was generally normal, although he observed tenderness in both her feet.

A second state-agency physician then reviewed the updated medical records, which included Dr. Miller's notes. This physician agreed with the residual functional capacity assessment of the previous non-examining agency doctor, which would preclude an award of disability benefits as of that time.

In June 2013, Johnson sought care at the Centers for Pain Relief. Johnson was first treated by nurse practitioner Kelly Anderson, who diagnosed Johnson with sacroilitis (inflammation of joints at lower spine and pelvis), lumbar pain, muscle spasms, unspecified myositis and myalgia (inflammation of muscles), and chronic pain syndrome. Johnson returned to the Centers for Pain Relief several more times in the

latter half of 2013. Anderson saw her three more times, Dr. Hedrick saw her twice, and another nurse practitioner saw her once. Each time, they noted her lumbar pain, lumbar radiculopathy (pain along sciatic nerve), and chronic pain syndrome. Dr. Hedrick also sought to decrease Johnson's pain through lifestyle changes; he instructed her to begin low-impact exercise.

Johnson received injections for her pain several times during the course of her treatment. Her treatment notes from the Centers for Pain Relief reflect that she had lumbar epidurals in May and June 2013. She reported 50 percent and 40 percent pain improvement, respectively, but each time for only a week. Dr. Hedrick administered steroid injections to joints in Johnson's pelvic region. In addition to the temporary improvement from the injections, on November 1, 2013, Johnson reported to Dr. Hedrick a 40 percent improvement in "ambulation, housework, sleeping," with "an overall percentage of improvement" of 40 percent.

In connection with Johnson's application for benefits, in March 2013 Dr. Hedrick completed a questionnaire about her functional capacity. He opined that she could sit, stand, or walk for only two hours each during an eight-hour workday and would need to switch positions every five to fifteen minutes. He also said that Johnson would need to lie down at unpredictable intervals and could not crouch or climb stairs. Last, he found that Johnson's symptoms were constantly severe enough to interfere with her attention and concentration and that they would cause her to miss more than four days of work per month.

In 2012 Johnson testified at a hearing before the ALJ that the constant pain in her back, legs, feet, shoulders, and chest, as well as headaches, prevented her from working. She added that she felt numbness in her legs several times a day, occasionally causing her to fall. Johnson explained that she drove to appointments and was able to cook and shop. But, she testified, her neighbor helped her change her sheets and clean her home, and her neighbor's husband took out her garbage and mowed her lawn.

At the hearing, a vocational expert testified that with the residual functional capacity described by the ALJ, Johnson could perform her past work. This residual functional capacity reflected the findings of the agency doctors: that Johnson could carry twenty pounds occasionally and ten pounds frequently, stand or walk for six hours in an eight-hour workday, occasionally climb ramps or stairs, and balance. The vocational expert conceded, however, that Johnson would be unemployable if she could lift only ten pounds occasionally and less than ten pounds frequently before needing a

break, if she would need to walk around every fifteen minutes for five minutes at a time, and if she were absent more than four days a month, all consistent with the opinion of Dr. Hedrick.

In her written decision denying Johnson's claim for benefits, the ALJ applied the standard five-step analysis for determining whether a person is disabled within the meaning of the Social Security Act. See 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one the ALJ determined that she had not engaged in substantial gainful activity since her alleged onset date, and at step two, that her impairments—degenerative disc disease and fibromyalgia—were severe. At step three the ALJ found that these impairments did not meet a listing for a presumptive disability. The ALJ then found that Johnson had the residual capacity to perform "less than a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)," and then, at step four, that she was capable of performing her past work as a sales clerk, cleaner, or telemarketer.

The ALJ gave "little weight" to Dr. Hedrick's opinion, because "that opinion [was] not consistent with the conservative nature of treatment, diagnostic imaging, and his own observations or those recorded by nurse practitioners at the pain center." The ALJ specifically pointed to Dr. Hedrick's notation that medications helped Johnson with daily living and his recommendation that she begin a "low impact" exercise program. The ALJ also found Dr. Hedrick's opinion inconsistent with the opinions of Dr. Miller and Dr. Kamineni, although she did not elaborate. By contrast, the ALJ gave "great weight" to the opinions of the non-examining state medical consultants, who had concluded that Johnson had less pronounced limitations consistent with an ability to do her past work. The Appeals Council denied review, and the district court upheld the denial of benefits.

On appeal, Johnson primarily challenges the ALJ's decision to give "little weight" to Dr. Hedrick's 2014 opinion. For claims filed before March 2017, a treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is well-supported by medical findings and consistent with substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016). The parties dispute whether Dr. Hedrick qualified as a "treating physician." Dr. Hedrick treated Johnson twice, administering steroid injections at one of those visits. She was also seen by nurse practitioners at the Centers for Pain Relief, where Dr. Hedrick also worked, on five occasions in 2013. See 20 C.F.R. § 404.1502 ("We may consider an acceptable medical source who has treated or evaluated you only a few times…to be your treating source if the nature and frequency of the treatment or

evaluation is typical for your condition(s).”). But in either case, because the ALJ adequately explained that Dr. Hedrick’s opinion was inconsistent with other record evidence, she was entitled to discount it.

Medical evidence may be discounted if it is internally inconsistent, and here the ALJ explained that Dr. Hedrick’s treatment notes did not support his later, more restrictive opinion regarding Johnson’s capabilities. See 20 C.F.R. § 404.1527(c); *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995). The ALJ pointed out that Dr. Hedrick’s treatment notes said that Johnson’s medication allowed her to “maintain activities of daily living—ability to work.” Dr. Hedrick also instructed Johnson to engage in “low impact exercise” to improve her cardiovascular fitness, spinal motion, and core strength. The ALJ permissibly concluded that these notes were inconsistent with the extreme limitations Dr. Hedrick noted on the residual functional capacity form. See *Knight*, 55 F.3d at 314.

Johnson also contends that the ALJ failed to consider properly, with the assistance of a medical expert, later-submitted evidence of her impairments. Johnson’s March 2014 visit to Dr. Hedrick occurred after the non-examining physicians reviewed her file. The ALJ did not ask these doctors for an updated opinion, nor did she consult a medical expert to determine the significance of these records. But an ALJ must consult with an expert only when, in the ALJ’s opinion, the new evidence might cause an initial medical opinion to change. SSR 96-6p, 1996 WL 374180, at *4. The ALJ here adequately explained why Dr. Hedrick’s 2014 opinion could be discounted, so the law did not require her to consult a medical expert.

Finally, the ALJ’s conclusion that Johnson could “perform less than a full range of light work” is supported by substantial evidence. “[T]he substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 688 (7th Cir. 2005). Substantial evidence supports the ALJ’s conclusions regarding Johnson’s ability to complete the central tasks of light work: lifting, walking, standing, pushing, and pulling. See 20 C.F.R. § 404.1567(b); *Pepper v. Colvin*, 712 F.3d 351, 363 (7th Cir. 2013). Dr. Hedrick’s treatment notes prior to 2013 indicated that Johnson was able to walk without assistance and to sit comfortably, and that her pain lessened with medication. Further, x-rays of Johnson’s hands showed no abnormalities, and notes from the pain center described her muscle tone and strength as normal. Finally, the ALJ explained that although Johnson was diagnosed with fibromyalgia in 2008 and degenerative disc disease in 1993, she was able to work despite these conditions for a

considerable period of time, and the medical evidence did not reflect that her condition had worsened so much as to render her totally disabled.

Johnson offered evidence that could reasonably support a finding of total disability and an award of disability benefits under the Social Security Act. Resolving the conflicting evidence about such a close case, in which subjective pain is so critical, is a job for the ALJ in the first instance. The ALJ's decision in this case was reasonable, even if others could look at the same evidence and reach a different conclusion.

The judgment of the district court affirming the denial of benefits is

AFFIRMED.